THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. HENRY SNOVER, PLAINTIFF IN ERROR.

Argued February 21, 1899—Decided June 12, 1899.

1. Upon the trial of an indictment for having carnal intercourse with a woman under the age of consent, the defendant offered to prove "his reputation for morality, virtue and honesty in living," which was overruled as being immaterial. *Held*, to be error.

2. "Honesty" in the above context means chastity or sexual propriety.
3. The age of the prosecuting witness being in issue, it was error to admit a baptismal certificate in which the date of birth was certified.

On error to the Warren Quarter Sessions.

Before MAGIE, CHIEF JUSTICE, and Justices GARRISON, LIPPINCOTT and COLLINS.

For the state, *George A. Angle,* prosecutor of the pleas.

For the defendant, *William H. Morrow.*

The opinion of the court was delivered by

GARRISON, J. Upon the trial of an indictment for having carnal knowledge of a woman under the age of consent, the defendant offered to prove his reputation by the following question put to a witness who lived in his neighborhood: " Do you know what is his [defendant's] reputation for morality, virtue and honesty in living?" To this question the prosecutor objected, stating as his sole ground that " it makes no difference." The objection thus made was sustained and a bill of exceptions sealed, upon which error is now assigned.

Evidence of the defendant's general reputation was, of course, admissible. *Baker* v. *State,* 24 *Vroom* 45.

If his general reputation were admissible upon a specific indictment, his specific reputation with respect thereto was relevant. *Dally* v. *Overseers of Woodbridge,* 1 *Zab.* 491; *Hawkins* v. *State, Id.* 630. But his specific reputation in other respects was irrelevant.

The contention of the state was that the question put to the defendant's witness went outside of the issue, in that it called for his reputation for " honesty in living," which it was argued, referred only to financial probity, hence was not germane to an issue that turned upon sexual laxity.

This distinction, which is not suggested by the objection,

is not well founded in fact. The word "honesty," from the Latin "*honestus*," is essentially a word that takes its meaning from its context. Primarily, it means "suitable," "becoming" or "decent"—meanings that obviously lend themselves to diverse contexts. In monied transactions it means financial integrity; in affairs of state it means loyalty; in matters of friendship it means steadfastness; and so on. In sexual relations it imports chastity. This is an accepted signification.

In Webster's International Dictionary it is said to mean " chastity, modesty."

As early as 1385 Chaucer so used it, saying,

> " Why lyked me thy yelow heer to see
> More than the boundes of myn honestie."

In 1621, Burton, in the "Anatomy of Melancholy," wrote, " It was commonly practiced in Diana's Temple for women to go barefoot over hot coals to try their honesties."

Shakespeare constantly so used it, notably in the phrase, " Wives may be merry and yet honest too." *Merry Wives*, IV., 2.

In 1661, Pepys, in the Diary of August 11th, gives it this sense.

In 1711, Steele, in the " Spectator," No. 118, paragraph 2, says, " The maid is *honest*, and the man dares not be otherwise."

In Fletcher and Rowly's " Maid of the Mill" it is said, " Her honesty was all her dower."

In 1749, Fielding, in "Tom Jones," XV., VIII., writes, " Miss Nancy was, in vulgar language, soon made an honest woman."

And Scott, in "St. Ronan's Well," chapter 25, gives it a like meaning.

The only conclusion from these citations is that common usage has given to the word "honesty," the meaning of sexual propriety when the context so requires. In the question put to the witness the expression "honesty in living" was directly

coupled with " morality and virtue." Clearly it had no alien meaning, and the question as a whole was proper. The contrary ruling deprived the defendant of a substantial element of his defence.

Another matter controverted upon the trial was the age of the prosecuting witness. Upon this issue the trial court admitted, over the defendant's objection, a written certificate of baptism in which the clergyman had given the date of birth. This was illegal evidence. It is true that the mother testified that her daughter was under the age of sixteen, but the jury saw the prosecuting witness, and upon the question of her age it may be that the clergyman's certificate had weight with them.

For these errors the judgment must be reversed.