[Crim. No. 1198. Second Appellate District, Division One.—March 7, 1925.]

## THE PEOPLE, Respondent, v. GEORGE E. FRANK, Appellant.

[1] CRIMINAL LAW—USE OF ASSUMED NAME—EVIDENCE—PREJUDICIAL ERROR.—In a criminal action a defendant cannot be held to account for the use by him of an assumed name, and it is prejudicial error to permit the introduction of evidence thereof.

[2] ID. — ABSENT WITNESSES — COMMENDATORY REMARKS BY JUDGE —
MISCONDUCT.—In this criminal action, it was error to read to
the jury, over defendant's objection, certain congratulatory and
commendatory remarks addressed by the trial judge and the dis-
trict attorney to certain important witnesses who had come to this
state, at their own expense, for the specific purpose of testifying
against defendant when the case was originally called for trial
in the superior court, but at which time defendant was not
present; and it was immaterial that the examination of said wit-
nesses at that time, in the absence of the defendant, was merely
for the purpose of laying the foundation for the introduction at
the trial of their testimony given at the preliminary examination of
defendant.

[3] ID.—CREDIBILITY OF WITNESSES—EVIDENCE.—No evidence regard-
ing the credibility of witnesses can be received by the court where
their credibility has not been attacked.

[4] ID. — MISCONDUCT OF TRIAL JUDGE — INFLUENCING OF JURY —
PREJUDICIAL ERROR.—For any misconduct on the part of the trial
judge from which it may be rightfully deduced that the jury was
influenced in rendering its verdict, prejudicial error will be con-
clusively presumed.

[5] ID.—ASSIGNMENT OF MISCONDUCT—APPEAL.—While a claim of mis-
conduct on the part of the trial judge cannot ordinarily be con-
sidered on appeal unless it appears that at the time of the occur-
rence the complaining party directed the attention of the trial
judge to the alleged impropriety and assigned the criticised action
as misconduct, nevertheless if the objectionable remark is of such
a character that the harmful result cannot be obviated by any
retraction or instruction, the failure to make such assignment of
misconduct will not affect the rights of the injured party.

[6] ID.—EVIDENCE—ASSUMED NAMES—CREDIBILITY OF WITNESSES—
PREJUDICIAL ERRORS.—In this prosecution for the crimes of bur-
glary and robbery, in which the defendant relied upon the de-
fenses of mistaken identity and an alibi, based upon his testi-
mony as against the testimony of certain witnesses given at the
preliminary examination, but who were absent at the time of the
trial, the guilt of the defendant was not manifest and, therefore,
the errors of the trial court in admitting evidence regarding the
use of false names by defendant and, in effect, in recommending to
the jury the high standing, etc., of said absent witnesses, thereby
increasing the credibility to be attached to their testimony, did
not come within the "saving grace" of section 4½ of article VI
of the constitution.

(1) 16 *C. J.*, p. 553, n. 66.   (2) 16 *C. J.*, p. 834, n. 1.   (3) 40
Cyc., p. 2784, n. 16.   (4) 16 *C. J.*, p. 827, n. 15.   (5) 16 *C. J.*, p. 183,
n. 58.   (6) 17 *C. J.*, p. 369, n. 6.

6.  See 24 Cal. Jur. 738.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Russ Avery, Judge. Reversed.

The facts are stated in the opinion of the court.

Frank W. Allender for Appellant.

U. S. Webb, Attorney-General, and Erwin W. Widney, Deputy Attorney-General, for Respondent.

HOUSER, J.—Defendant was convicted on an information in which he was charged with the commission of the crimes of burglary and robbery. He appeals from the judgment and an order denying his motion for a new trial.

Appellant makes the point that the court erred in allowing the deputy district attorney, over defendant's objection, to interrogate witnesses as to whether or not defendant had previously gone under certain assumed names.

An examination of the record shows that, against defendant's specific objection thereto, on three separate occasions the court permitted questions to be asked and answered which disclosed the fact that on each of such occasions defendant had gone under an assumed name, and that on no two of which times had he used the same name. However, as to the use by defendant of one of the assumed names, the judge instructed the members of the jury that they should "purge it from their minds." Regarding the second occasion when defendant used an *alias,* it was shown in connection therewith that he had been arrested on a bench-warrant for his failure to appear for trial, and when taken into custody was found in a hotel where he had registered under an assumed name. The third occasion or occasions had to do with a false name used by defendant when first arrested and by his use of the same name at his arraignment both in the justice court and in the superior court. On no one of the occasions when a witness was thus interrogated with respect to the use by defendant of an assumed name was the questioning done under proper cross-examination.

[1] The authorities are numerous which hold that in a criminal action a defendant cannot be held to account for

71 Cal. App.—37

the use by him of an assumed name, and that it is preju-dicial error to permit the introduction of evidence thereof. (*People* v. *Fleming,* 166 Cal. 357, 381 [Ann. Cas. 1915B, 881, 136 Pac. 291]; *People* v. *Mohr,* 157 Cal. 732 [109 Pac. 476]; *People* v. *Arlington,* 123 Cal. 356 [55 Pac. 1003]; *People* v. *Denby,* 108 Cal. 54 [40 Pac. 1051].)

[2] When the case against defendant was originally called for trial in the superior court, defendant was not present. At that time and place a Mr. and a Mrs. Mc-Pherson, who had given their testimony at the preliminary examination of defendant in the justice court, were in at-tendance as prospective witnesses. In the absence of de-fendant and the consequent necessity of a continuance of the hearing of the action, the trial judge suggested the advisability of laying a foundation for the use of the testi-mony given by such witnesses at the preliminary examina-tion of defendant. Acting upon such suggestion without the presence of defendant, certain testimony of the two McPhersons was taken. Mr. McPherson was "sworn as a witness on behalf of the people." In answer to questions propounded to him at that time by the deputy district attorney, he testified in substance that he resided at Fort Worth, Texas; that he was in the construction business; that he was the husband of Mrs. McPherson "who was just on the stand"; that he was temporarily in Los Angeles for the purpose of testifying in the action; that thereto-fore he had testified at the preliminary examination when defendant was first charged with the offense of "robbery and burglary"; and that on the next day the witness in-tended to return to the state of Texas. At the request of the deputy district attorney, Mr. McPherson then submitted exemplars of his handwriting, which were formally witnessed by the clerk, the bailiff, and the deputy district attorney. Whereupon the following occurred:

"The Court: It (the exemplar) is ordered filed. Now, Mr. and Mrs. McPherson, the court desires to extend to you the thanks of the court for coming out here to be witnesses in this case. We regret the necessity of postponing the case, but we appreciate your being here just the same as though you had testified.

"Mr. Hill (Deputy District Attorney): May I supplement that, that I think both Mr. and Mrs. McPherson are to be heartily commended for the patriotic duty that they have assumed as American citizens coming here at their inconvenience and expense merely for this purpose, as there was no power on the part of any officer of this state to have summoned or compelled Mr. or Mrs. McPherson to be here; they were outside the state of California, and the process of the state courts does not extend beyond its borders. We have no power to subpoena, and no other power that could be enforced to have brought Mr. and Mrs. McPherson here against their will; and I say when they have, at their great personal inconvenience, made this trip across here for the purpose of testifying in this case, I believe that they should be publicly commended for their act.

"The Court: I am pleased to unite in that commendation. You do not know how much the state is frequently inconvenienced by not being able to get witnesses, and the unwillingness of witnesses of high standing to come and testify; and when witnesses do come from a sister state to tell all they know of the facts, it is always a satisfaction to the officers having the responsibility of enforcing the law, and it is always commendable, the patriotism and high standard of citizenship of such persons who are willing to come. We appreciate it very much."

When the case against defendant finally came on for trial, after hearing certain evidence with reference to the absence of the two McPhersons, the judge of the trial court made an order to the effect that the testimony given by such witnesses at the preliminary examination of defendant in the justice court might be read in evidence. Thereafter, in the presence of the jury, over defendant's objection, for the ostensible purpose of "further laying the foundation," the deputy district attorney read into evidence the so-called testimony given by said two witnesses at the time when defendant was not present, including the congratulatory and commendatory remarks made to such witnesses by the judge and the deputy district attorney heretofore quoted herein.

During the reading of the proof preliminary to the introduction in evidence of the testimony given by the said two witnesses at the preliminary examination of defendant, the

court declined to accede to defendant's request that the jury be excused from the courtroom. After the testimony of the two McPhersons which had been taken when defendant was not present, together with the commendatory remarks to them by the judge and the deputy district attorney which had been made at the same time, had been read in the presence of the jury, the judge "admonished" the jury that all such proceedings were addressed to the "law side of this case" for the purpose of laying a foundation for the exercise of discretion as to whether or not the depositions of the two McPhersons should be received in evidence. The judge continued: "It is all preliminary and addressed to the court on the question of the reading of those depositions. When those depositions are read, if they are read, you pay attention to all the things brought out in those depositions, because they will be for you to pass upon. All things prior to that are for the court to pass on, and any questions asked, rulings or comments by the court, or any objections made by Mr. Allender (attorney for defendant), are things that you have nothing to do with, . . . "

While appellant bitterly complains of the conduct of the trial judge in permitting evidence to go to the jury which was received at a time when defendant was not present, the greater part of his criticism is directed against the action of the court and the deputy district attorney in effect testifying to the jury of the "high standing" of the two McPhersons. As the case was presented, the credit which was to attach to the identification of defendant by the two McPhersons was of paramount importance, without which his conviction would have been doubtful, if not impossible. Without considering the question of the possible admissibility at any time of the evidence given by the two McPhersons at a time when defendant was not on trial or even present, in the status of the case at the time the remarks regarding the two McPhersons by the judge and the deputy district attorney were permitted in the hearing of the jury, no such testimony was admissible from any source. **[3]** The credibility of the witnesses had not been attacked; consequently no evidence regarding their credibility could be received by the court. (Sec. 2053, Code Civ. Proc.; *People* v. *Bush,* 65 Cal. 129 [3 Pac. 590]; *People* v. *Cowgill,* 93 Cal. 596 [29

Pac. 228].) But even assuming the admissibility of such evidence at a proper time and in proper circumstances, at the time in question neither the judge nor the deputy district attorney had been sworn as a witness in the case; nor had the necessary foundation been laid for the reception of such evidence. In addition thereto, the right of cross-examination of the judge and the deputy district attorney, as such witnesses, had not been accorded defendant's counsel. It may be that there was no intention that either the deputy district attorney or the judge should offer testimony affecting the credibility of the two McPhersons. Their remarks were probably meant only for the purpose of courteously expressing appreciation of the trouble which the two McPhersons had taken in the matter, to say nothing of the expense borne by them which was incident to and connected with their trip from the state of Texas to the city of Los Angeles. However, the intent and purpose of the deputy district attorney and the judge in making such remarks are not controlling factors in the determination of the rights of defendant in the premises. If the effect of their conduct was substantially to prejudice defendant's case in the eyes of the jury, he cannot be said to have had such a trial as is vouchsafed to him under the laws of the land. [4] The rule, as announced in numerous authorities, is that for any misconduct on the part of the trial judge from which may be rightfully deduced that the jury was influenced in rendering its verdict, prejudicial error will be conclusively presumed. In the case of *Collins* v. *State,* 99 Miss. 47 [Ann. Cas. 1913C, 1256, 54 South. 65], the court quoted with approval the following from the case of *Green* v. *State,* 97 Miss. 834 [53 South. 415]:

"It is a matter of common knowledge that jurors, as well as officers in attendance upon court, are very susceptible to the influence of the judge. The sheriff and his deputies, as a rule, are anxious to do his bidding; and jurors watch closely his conduct, and give attention to his language, that they may, if possible, ascertain his leaning to one side or the other, which, if known, often largely influences their verdict. He cannot be too careful and guarded in language and conduct in the presence of the jury to avoid prejudice to either party. (21 Encyc. P. & P., 994, 995, and notes.)

The court will not stop to inquire whether the jury was actually influenced by the conduct of the judge. All the authorities hold that, if they were exposed to improper influences, which might have produced the verdict, the presumption of law is against its purity; and testimony will not be heard to rebut this presumption. It is a conclusive presumption.''

In the case of *Smith* v. *Rothschild & Co.*, 13 Ga. App. 293 [79 S. E. 88], a new trial was granted ''solely because of the remark made by counsel for the plaintiff'' in the presence of the jury that if a certain witness on the stand ''were let alone she would impeach herself.'' In the course of the opinion the court said: ''If the testimony of a witness authorizes the conclusion, an attorney may properly argue that the witness has shown himself to be unworthy of credit on account of the unreasonable and contradictory statements appearing in the testimony; but this is quite a different thing from telling the jury, while the witness is on the stand, that if he is let alone he will impeach himself. In harmful effect, this may be equivalent to testimony that the witness is of bad character and not worthy of credit; and a witness is impeachable only by legal evidence. In the case of a popular and influential attorney, such as was the counsel who made the remark in this case, an expression of his opinion as to the character of the witness is likely to have weight with the jury and prejudice the adversary's case, . . . The object of all legal investigations is the discovery of the truth; but truth must be discovered by the application of rules of law to competent and relevant evidence, and after a trial in accordance with orderly procedure. The remark made by the counsel in the present case was doubtless inadvertent, and not intended to prejudice the adversary's case. But its harmful effect was not removed, either by a withdrawal of the improper remark and explanation by the counsel, or by a rebuke by the court; . . . (citing cases).''

In the case of *Western Union Tel. Co.* v. *Furlow*, 121 Ark. 244 [180 S. W. 502], an attorney in his closing argument to the jury said that ''he and Mr. Young had been raised boys together and had loved each other like brothers ever since, and Mr. Young's veracity was beyond question.''

In commenting upon the propriety of such remark and its probable effect upon the minds of the members of the jury, the court said: "With this assurance the jury would be more likely to believe Mr. Young than the operator, and its effect would be to induce the jury to disregard the statement of the operator in regard to the notations on the telegram. This attempt to bolster up the evidence of Mr. Young was improper and prejudicial."

If it is reversible error for an attorney either to make a derogatory remark regarding a witness in the presence of the jury, or, on the other hand, to vouch for the veracity of a witness, it would seem that the granting of a new trial should result from highly commendatory remarks by the judge and the deputy district attorney concerning important witnesses, as was done in the instant case.

A California case which in its effect is strikingly similar to the case at bar is that of *McMinn* v. *Whelan,* 27 Cal. 300. A statement of the necessary facts, with the ruling thereon, is contained in the opinion of the court, which we quote as follows:

"Johanna Maume was examined as a witness on behalf of plaintiff to prove Mathew Maume's prior possession of the demanded premises. On her cross examination inquiries were made of her respecting her residence and business. The plaintiff's counsel objected to this course of examination. The objection was overruled, but at the same time his honor the Judge stated that the witness was one of the most respectable women in his neighborhood. To this remark the defendant's counsel excepted, when the Judge further stated that he did not mean to say that she was one of the most respectable, but a woman of respectability. The defendants complain of the conduct of the Judge in this particular as an irregularity of sufficient magnitude to authorize a reversal of the judgment.

"From the high and authoritative position of a Judge presiding at a trial before a jury, his influence with them is of vast extent, and he has it in his power by words or actions, or both, to materially prejudice the rights and interests of one or the other of the parties. By words or conduct he may on the one hand support the character or testimony of a witness, or on the other may destroy the same, in the es-

timation of the jury; and thus his personal and official influence is exerted to an unfair advantage of one of the parties, with a corresponding detriment to the cause of the other. We regret the necessity for an expression of our disapproval of the irregularity of which complaint is made, and though we do not impugn the expression as designed to aid the side of plaintiff, we may say, we should not hesitate to reverse the judgment because of it, if the same depended in any material degree upon the testimony of the witness whose character and standing was thus indorsed; . . . ''

On the same point, see the following California cases: *Estate of Blake*, 136 Cal. 306, 311 [89 Am. St. Rep. 135, 68 Pac. 827]; *People* v. *Conboy*, 15 Cal. App. 97, 101 [113 Pac. 703]; *People* v. *Pitisci*, 29 Cal. App. 727, 736 [157 Pac. 502].

In the case of *People* v. *MacDonald*, 167 Cal. 545 [140 Pac. 256], the defendant was charged with the commission of the crime of rape. In the course of the trial the judge referred to the prosecuting witness as being ''courteous, kind and modest.'' The supreme court in condemning the remark by the trial court, said in part: ''Under a system of law which prohibits judges from charging juries with respect to matters of fact (Const., art. VI, sec. 19), and which gives to the jury the exclusive power to determine the facts (Pen. Code, sec. 1126), the trial judge should, as has often been pointed out, use the greatest care to avoid, in the presence of the jury, any utterance which may be construed as an intimation of his opinion on the issues of fact which are to be determined by the jury, (citing cases,) . . . Anything said by the judge, indicating that the witness on the stand had, by her demeanor, created a favorable impression on his mind, would naturally tend to lead the jury to give to her testimony greater weight than they otherwise might. . . . Such an intimation constituted an invasion of the jury's province of judging the facts, in the light of the appearance and demeanor of witnesses, and might be highly prejudicial.'' It was, however, concluded in that case that the circumstances surrounding the remark by the trial judge were such that it was the duty of counsel for the defendant to direct special attention of the court to the objectionable matter, in order that the court might have had an oppor-

tunity to disclaim any intention to express an opinion on the weight of the testimony.

[5] It is further pointed out in the opinion that, while a claim of misconduct on the part of the trial judge cannot ordinarily be considered on appeal unless it appears that at the time of the occurrence the complaining party directed the attention of the court to the alleged impropriety and assigned the criticised action as misconduct, nevertheless if the objectionable remark was of "such a character that the harmful result could not be obviated by any retraction or instruction," the failure to make such assignment of misconduct would not affect the rights of the injured party. In the instant case, although there was no assignment by defendant of misconduct, as such, there was no occasion for him to do so. Nor is it urged by respondent that appellant's claim of misconduct by the judge and the deputy district attorney is not allowable because of defendant's failure to take exception thereto and make assignment of error thereon at the time such remarks were made. It will be remembered that the remarks by the trial judge and the deputy district attorney were not originally spoken in the course of the trial of defendant, but occurred at a time when defendant was not present and when a part of the testimony of the two McPhersons was taken for the purpose of establishing the fact that they would be absent from the state when the case was to be tried. Those remarks by the judge and the deputy district attorney were read in evidence to the jury over the repeated objections by defendant's counsel that such remarks, together with the remainder of the proceedings at that time, were "hearsay . . . incompetent . . . no proper foundation . . . not made in the presence of the defendant . . . prejudicial to the defendant and necessarily injurious and not involving any issue in this case." But even though it might be considered that either on the making of the remarks by the judge and the deputy district attorney, or when the same were read to the jury, defendant should have excepted thereto and assigned error thereon, if there had been such special assignment of misconduct, it is apparent that any attempted correction thereof would have but accentuated the error. As was intimated in *Smith* v. *D. Rothschild & Co.*, 13 Ga. App. 293 [79 S. E. 88] (*supra*), their injurious

effect would not have been removed either by a withdrawal of the improper remarks or by an explanation thereof. The "harmful result could not be obviated by any retraction or instruction. In such cases the misconduct will furnish ground for reversal, even though the court may have taken immediate steps to correct any impression improperly conveyed to the jury." (*People* v. *MacDonald,* 167 Cal. 545, 551 [140 Pac. 256, 259], citing *People* v. *Derwae,* 155 Cal. 592 [102 Pac. 226].)

[6] The action of the court in admitting evidence regarding the use of false names by defendant could have had but one result, namely, that of discrediting the defendant's testimony.

On the other hand, the action by the court in recommending to the jury the "high standing," etc., of the two McPhersons could have had but the effect of increasing the credibility to be attached to their testimony.

The testimony of the McPhersons which the jury necessarily believed in order to convict defendant was in substance that the offense was committed, and the McPhersons identified defendant as the man who had robbed Mr. McPherson, and who also had burglarized their apartment. Defendant denied that at the time the crime was committed he was present at or in the vicinity of the place where the McPhersons were living. The issue as between the defendant and the McPhersons was either that of veracity of the opposing witnesses or that of possible mistake in the matter of identification of defendant by the McPhersons. The matter of credibility, therefore, was necessarily the determining factor in the evidence. In such circumstances defendant was entitled to have his evidence go to the jury unimpaired and unimpeached by inadmissible testimony regarding the use by him of any assumed name. Considering the extreme importance to the defendant of the testimony of the McPhersons relating to defendant's identification, the "bolstering up" of their testimony by the judge and the deputy district attorney was likewise most prejudicial to defendant's rights in the premises.

If the evidence presented on the trial of the case had been such that the guilt of the defendant was manifest, it is possible that under the "saving grace" of section 4½ of article

VI of the constitution it might be held that there had been no miscarriage of justice. But while it cannot be denied that evidence on the part of the prosecution strongly points to defendant's guilt, the "alibi" presented by defendant and several apparently respectable and disinterested witnesses would, if believed, have established defendant's innocence. The question of defendant's identification as the robber and burglar having been dependent upon the strength of the testimony of the two McPhersons may have been, and probably was, solved by the jury and thus determined against defendant because the trial judge threw his judicial weight into the scales and vouched for the "high standing" of such witnesses.

The judgment and the order denying defendant's motion for a new trial are reversed.

Curtis, J., concurred.

CONREY, P. J., Dissenting.—I dissent. I am of the opinion that no prejudicial error was committed in relation to the evidence that on certain occasions defendant had gone under an assumed name. It is true that when the defendant on cross-examination was asked whether he at one time went under the name of William Mack, an objection to this question was overruled, and defendant answered in the affirmative. But shortly thereafter, the court reconsidered that ruling, sustained the objection, struck out the answer, and informed the jury that all questions in regard to the witness going under the name of William Mack, and all inferences to be drawn therefrom, and the answers to such questions, were stricken out, "and the jury instructed to purge it from their minds." With regard to the testimony showing that the defendant when arrested for the first time under this charge gave the assumed name of Williamson, and when arrested on a bench-warrant after his. failure to appear at the trial on July 1, 1924, was found in San Francisco under another assumed name, I think that there was no error in admitting such testimony. In each instance, the use of the assumed name was an incident closely connected with and in substance a part of the act of flight after the crime was committed. Considered in that light, I think the

rulings of the court are not subject to the general rule
established by the decisions to the effect that a defendant
may not be discredited before the jury by proof that on
prior occasions entirely disconnected with the action, he
has used an assumed name. I understand that in order
that flight may be considered as an element tending to in-
dicate a guilty mind, there must be evidence that the defend-
ant knew that a crime had been committed, and perhaps also
that he knew that he was charged therewith. (8 Cal. Jur.,
p. 347.) This defendant used the name of Williamson, not
only when he was arrested with a part of the stolen property
in his possession, but after he had been indicted under the
assumed name of Williamson he pleaded by that name as
his true name; although later he gave his true name. And,
of course, it cannot be denied that when he used the name
of Herold in San Francisco, he knew of the pendency of this
action. On the morning of July 1, 1924, only half an
hour before the case was to be called for trial, he was in his
attorney's office apparently in preparation for the trial;
yet he disappeared before the case could be called, and
thereby forced the case from the calendar of that date.

Referring back to the evidence concerning the use of the
assumed name William Mack, I think that since the testi-
mony was stricken out in the manner above stated, there
remains no possible ground of complaint by the defendant,
unless it be that the district attorney was guilty of mis-
conduct in asking the questions. But the defendant cannot
avail himself of that objection, since the record does not
show that defendant made any assignment of misconduct
in relation to that matter. (2 Cal. Jur., p. 281.)

The other important point discussed in the main opinion
relates to a matter connected with certain testimony given
by the McPhersons, and especially to remarks made by the
judge and by the district attorney at the close of the giving
of that testimony. Prior to that time certain depositions of
the McPhersons had been taken, which were on file in the
action. On July 1, 1924, the McPhersons had come from
their Texas home to California in order to testify at the
trial of this action. When the abrupt disappearance of
the defendant compelled a postponement of the trial, the
court, in the absence of a jury and in the absence of the

defendant, took the testimony of Mr. and Mrs. McPherson, showing the fact of their intended immediate return to Texas, and furnished the court a means of identification of their signatures. This was evidence addressed solely to the court as a part of the ground for admission of the depositions in evidence in the event that at the later trial of the case the personal presence of the McPhersons could not be obtained. It was at the close of the giving of this testimony that the judge and district attorney made the remarks referred to in the main opinion. It is clear enough that there was no intention to make comments upon the credibility or accuracy of the testimony contained in the depositions. But assuming that in some degree the remarks as made amounted to a commendation of the character of those witnesses, I think that there was no error except one in the nature of an unintentional misconduct by the judge and the district attorney. I have searched the record to find any assignment of misconduct made by the attorney of the defendant in connection with this matter, either at the time when the remarks were made, or at the time when the court allowed them to be read, in the presence of the jury at the trial of the action, as a part of the evidence constituting the foundation for admission of the depositions in evidence. Therefore, the same rule applies to which I have referred in connection with the questions asked of the defendant concerning the use by him of the assumed name of William Mack. In each of these instances, if there was any misconduct, I think that it was not of such a nature that the court can say that it was beyond cure by means of appropriate instructions. This being so, the rule applies that defendant cannot avail himself of an objection to such misconduct, when he omits to present that objection to the lower court, and only presents it for the first time in the court of appeal.

Inasmuch as I understand that the evidence here very strongly tends to establish beyond a reasonable doubt the guilt of the defendant, I have been unable to agree that the said errors, assuming them to be such, would justify a reversal.

A petition for a rehearing of this cause was denied by the district court of appeal on April 6, 1925, and respondent's petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 4, 1925.

All the Justices concurred, except Lawlor, C. J., *pro tem.,* and Seawell, J., who dissented.