[Crim. No. 45. Fourth Appellate District.—May 26, 1931.]

THE PEOPLE, Respondent, v. GLADYS SELLAS et al., Appellants.

E. C. Gridley and H. Wenzlaff for Appellants.

U. S. Webb, Attorney-General, John L. Flynn, Deputy 'Attorney-General, Stanley Mussell, District Attorney, and James L. King, Deputy District Attorney, for Respondent.

MARKS, J.—The appellants were jointly charged by an information filed by the district attorney of San Bernardino County with the crime of burglary, alleged to have been committed on or about the twenty-seventh day of November, 1930, by entering the dwelling-house of John S. Gemberling, and stealing and taking personal property therefrom. The jury returned a verdict finding the appellants guilty of burglary in the second degree. Their motion for a new trial was denied, and this appeal is taken from the order denying their motion for a new trial and from a judgment pronounced upon them.

The evidence before us shows that John C. Gemberling owned a dwelling-house on "F" Street in the city of San Bernardino, California, in which he resided. At about 9 o'clock on the morning of November 27, 1930, which was Thanksgiving Day, he left his residence for the town of Etiwanda where he had dinner with relatives, returning to his home on the evening of the same day. Before leaving his house, Gemberling closed and locked all of the exterior doors and windows. There was a screened porch on the rear of this house which was entered through a screen door. One door and two windows opened from the house on to this screened porch. One of the windows was so constructed that it could not be opened, and the other window was of the type commonly known as a French window, which was fastened by a catch on the inside. The back door of the house was

locked with an ordinary door lock, and in addition was fastened on the inside with a bolt which slid into a socket on the casing.

Shortly after noon on November 27, 1930, some of Gemberling's neighbors observed a small automobile, which was subsequently identified as belonging to and driven by appellant Sellas, standing on the driveway to the rear of the Gemberling house. Those neighbors saw the appellants taking bedding, a radio, a radio stand, a floor lamp and other household goods from the Gemberling house and load them into the automobile, going to and from the house through the screen door and rear door of the house. When the appellants had driven away in their automobile with the household goods they had taken, Mrs. Schaffer, a next-door neighbor of of Gemberling's went over to his house to investigate their activities. She found one pane in the French window broken out, the window unlatched and opened, and the back door of the house unlocked and opened, and the house in complete disarray. The floors were littered with broken dishes and other personal effects. The radio, radio stand, a floor lamp, a number of dishes, considerable silver, household goods, some bric-a-brac, and all the bedding from two beds in the house had been removed. She immediately called the San Bernardino city police, who, upon arriving at the Gemberling house locked it up and departed, Mrs. Schaffer returning to her own residence. Shortly thereafter the appellants returned to the Gemberling house and attempted to enter through the rear door which they found locked. Mrs. Schaffer again went to the Gemberling house and prevented appellants from entering in. They left and the police were again called. The appellants returned to the house within a few minutes and were placed under arrest.

A search of a small house rented by appellant Sellas resulted in the discovery of practically all of the personal property taken from the Gemberling home. Some few of the stolen articles were, however, not recovered.

The defense interposed by appellants was a novel one. They admitted entering the Gemberling house but maintain that they only removed the personal effects belonging to appellant Farquhar. They testified that they first met Gemberling on or about November 12, 1930, when they went to his house together to interview him about the employment of

Mrs. Sellas as his housekeeper. According to their version of the affair this visit resulted in Gemberling employing Mrs. Farquhar as his housekeeper and companion. They testified that their visit resulted in the two remaining at the Gemberling house almost continuously four days and nights where, with Gemberling and another man, they engaged in a riotous, drunken and immoral "party". Mrs. Farquhar testified that she continued her residence with Gemberling as housekeeper and companion until the morning of Thanksgiving Day, when she became tired of her relations with him and determined to break them off and move from his house. Both appellants testified that Gemberling was a man of low habits and a degenerate. They produced a number of witnesses whose testimony tended to give color to their story. However, the jury, by its verdict, refused to give credence to the testimony offered by the appellants. Without detailing the evidence, it appears from the record that the many serious contradictions and inconsistencies in the evidence of appellants and of their various witnesses is sufficient to throw serious doubt upon their credibility.

A number of the close neighbors of Gemberling were called as witnesses by the respondent. They thoroughly contradicted the testimony of appellants and refuted the theory of their defense. None of these witnesses had seen either of the appellants at the Gemberling house, nor had any of them seen or heard anything that would indicate that any drunken and immoral "parties" occurred there during the month of November, 1930. If the stories of the appellants were true it would seem strange that some of these neighbors would not have seen either or both of the appellants at the Gemberling house, and heard the noise made by the continual debaucheries that appellants testified were occurring there.

Appellants urge as a first ground for reversal of the judgment that the evidence shows that during the time of their entering the Gemberling house they were so intoxicated that they were not capable of entertaining an intent to steal. Both appellants were witnesses in their own behalf, and their testimony is a complete answer to this contention. They detailed with great particularity their activities on November 27, 1930, and were able to remember and clearly state where they claimed to have been and what they maintained they did during the entire day. Their evidence shows that though

they had been drinking during the early morning, the liquor they had consumed had not clouded their minds to any material extent.

After the close of appellants' case respondent, over their objection, was permitted to introduce evidence of the general reputation of Gemberling in the community in which he lived for truth, honesty, integrity and morality. The action of the trial court in overruling their objections to these questions and permitting the introduction of this evidence is assigned as error by them.

An examination of a number of California cases bearing upon the question of the right of a party to bolster up the testimony of one of his witnesses by evidence of good reputation for truth, honesty and integrity where the opposing party has not directly attacked such reputation, leads us to the conclusion that evidence upon such traits of character should not have been admitted in this case.

In the early case of *People* v. *Ah Fat,* 48 Cal. 61, it was held that testimony indicating that a witness for the People was a suborned witness was an assault upon his character which would permit the People to introduce evidence of his good character for truth and veracity, as the attack upon his character was made upon a matter entirely irrelevant to the issues of the case.

In the case of *People* v. *Amanacus,* 50 Cal. 233, the court held that proof that the witness for the People had been convicted of a felony was such an attack upon his character as to furnish a foundation for and permit the introduction of testimony of his good reputation for truth, honesty and integrity in the community in which he lived, under the provisions of sections 2051 and 2053 of the Code of Civil Procedure.

These cases were both reviewed and cited in the case of *Title Ins. etc. Co.* v. *Ingersoll,* 153 Cal. 1 [94 Pac. 94, 96], in which the court said:

"Defendant offered evidence in support of his character as to truth, honesty and integrity, and over the objections of plaintiff that no attempt had been made to impeach the character of defendant, and that the evidence was incompetent, irrelevant and immaterial, defendant was allowed to introduce the evidence of three witnesses to the effect that his reputation in the respects mentioned was good. As a

matter of fact, no impeachment of the character of the defendant had been attempted, other than such impeachment as was involved in the production of evidence contradicting that of the defendant on some of the issues in the case in some minor respects. This evidence, really offered for the purpose of bolstering up the evidence of defendant, was, in our opinion, clearly inadmissible. Our statute provides: 'Evidence of the good character of a party is not admissible in a civil action, nor of a witness in any action, until the character of such party or witness has been impeached, or unless the issue involves his character.' (Code Civ. Proc., sec. 2053.) The issue in this case did not involve the character of defendant as a party (see *Van Horn* v. *Van Horn*, 5 Cal. App. 719 [91 Pac. 260]), and no attempt had been made to impeach his character. It is true that sections 2051 and 2052 of the Code of Civil Procedure provide that a witness can be impeached 'by contradictory evidence, or by evidence that his general reputation for truth, honesty, or integrity is bad' or by evidence that he has been convicted of a felony, or has made inconsistent statements, but it does not follow that every impeachment of a witness thus enumerated is an impeachment of the *character* of the witness. The statute allows such evidence only when the *character* of the witness is impeached. Evidence that the general reputation of a witness for truth, honesty, and integrity is bad is, of course, an impeachment of the character of the witness and may be met by rebuttal evidence to the contrary. There is much authority for the proposition that proof that the witness has been convicted of a felony is an assault upon his character justifying the admission in rebuttal of evidence of good reputation for truth, honesty and integrity. It has so been held in this state. (*People* v. *Amanacus*, 50 Cal. 233.) Some courts have held that proof of declarations by the witness inconsistent with the testimony given by him constitutes such an assault upon his character, but this rule can by no means be held to be a generally accepted one. This court has held that proof to the effect that a witness had made overtures to the parties against whom he testified, to testify for them if he was paid for it, was such an attack, warranting evidence of good character in rebuttal. (*People* v. *Ah Fat*, 48 Cal. 63.) The court was, however, careful to state that if the testimony had been directed to mere proof of con-

tradictory statements of the witness upon matters relevant to the issues being tried, the propriety of evidence of character to sustain the testimony of the witness 'would have been to say the least, questionable'. In *People* v. *Bush*, 65 Cal. 129 [3 Pac. 590], a judgment was reversed because of giving of an improper instruction, and the admission of evidence on the part of the prosecution in support of the character of a witness. It does not clearly appear in the opinion whether the impeachment of the witness was merely by evidence contradicting his testimony, or by proof of previous statements by him inconsistent with such testimony, which Mr. Justice Sharpstein said in his concurring opinion amounted to nothing beyond contradictory evidence. In any event a majority of the court concurred in the view that under section 2053 of the Code of Civil Procedure, evidence of the reputation of the witness to prove good character is admissible only when the character of the witness has been attacked by evidence that his reputation for truth, honesty, and integrity is bad, which to some extent is inconsistent with the two earlier cases. But so far as it forbids the introduction of such evidence where the only impeachment is one by contradictory evidence, it is not inconsistent with either, and is in full accord with nearly all the decisions in other states. Mr. Wigmore says that no court favoring admission under such circumstances seems to have attempted a reasoned justification of its policy, and the great majority of jurisdictions agree in excluding such evidence. (See 2 Wigmore on Evidence, sec. 1109, and note, and generally, secs. 1104 to 1108.) The distinction is clearly made by the cases between a mere assault upon the credit of a witness and an assault upon his character, and cases like the one under consideration are placed in the former class.''

In *People* v. *Bush*, 65 Cal. 129 [3 Pac. 590, 592], it was held that ''It is only in cases where the witness' character is attacked by evidence that his reputation for truth, honesty, and integrity is bad that evidence on the other side is admissible.''

In *Van Horn* v. *Van Horn*, 5 Cal. App. 719 [91 Pac. 260], the court held that in a trial of a divorce action in which the complaint charged adultery, the character of the parties was not such an issue, nor was the character of the corespondent so attacked, as to permit evidence of their good

reputation. This last case finds support in the case of *Rodetsky* v. *Nerney*, 72 Cal. App. 545 [237 Pac. 792], which was an action for damages for breach of promise of marriage with seduction alleged in aggravation of the damages. In this case the court held that the character of the defendant was not put in issue by the allegations of the complaint so as to permit the introduction of evidence of his good reputation.

In the case of *People* v. *Frank*, 71 Cal. App. 575 [236 Pac. 189, 191], this same question arose in connection with commendatory remarks by the trial judge and the district attorney of the character and reputation of two of People's witnesses. The appellate court said: "The credibility of the witnesses had not been attacked; consequently no evidence regarding their credibility could be received by the court. (Sec. 2053, Code Civ. Proc.; *People* v. *Bush*, 65 Cal. 129 [3 Pac. 590]; *People* v. *Cowgill*, 93 Cal. 596 [29 Pac. 228].)"

In the case of *People* v. *McMillan*, 59 Cal. App. 785 [212 Pac. 38], the defendant was prosecuted for the crime of rape upon a girl of the age of fourteen years. In this case the appellate court used the following language: "The court sustained objections to evidence of defendant's reputation for truth, honesty and integrity and for peace and quiet. No element of force or violence was involved in the charge and no attempt had been made to impeach defendant as a witness. Appellant urges that, since the defendant squarely contradicted the testimony of the prosecutrix, the evidence offered was highly important to show that he was worthy of belief. The reputation of a witness for truth, however, cannot be supported by such evidence until it has been challenged by evidence produced by the party against whom he has testified. Evidence of his general reputation for traits of character involved in the charge against him may, of course, be given, but the evidence offered did not relate to such traits. The traits of character involved in a charge such as this are virtue, chastity and morality. (*State* v. *Snover*, 63 N. J. L. 382 [43 Atl. 1059]; *State* v. *Brady*, 71 N. J. L. 360 [59 Atl. 6]; *State* v. *Thompson*, 58 Utah, 291 [38 A. L. R. 397, 199 Pac. 161].) Evidence of general reputation for peace and quiet is not admissible. (*Wistrand* v. *People*, 218 Ill. 323 [75 N. E. 891].) See generally, *People*

v. *Fair,* 43 Cal. 138; *People* v. *Burke,* 18 Cal. App. 72 [122 Pac. 435]; *People* v. *Romero,* 58 Cal. App. 31 [207 Pac. 933]; *People* v. *Thomas,* 58 Cal. App. 308 [208 Pac. 343]; *State* v. *Bloom,* 68 Ind. 56 [34 Am. Rep. 248].) The court refused to give an instruction proposed by the defendant to the effect that evidence of the nature offered to establish the good character of defendant was pertinent to the issue of guilt or innocence. Under the foregoing authorities, it is clear that the ruling was not error.''

Applying the rules which we find indicated in the foregoing decisions we believe that the evidence of the good reputation of Gemberling for truth, honesty and integrity was clearly inadmissible under any theory. His character, as far as these traits relate to it, was only put in issue by the evidence of other witnesses which squarely contradicted his testimony as to the relationship existing between himself and appellants, and particularly Mrs. Farquhar. Such a contradiction of testimony has never been held sufficient to permit a party to attempt to support the testimony of his witness by proof of his good reputation for truth, honesty and integrity.

The only attempt to attack Gemberling's character was by evidence indicating his lack of morality and his degeneracy which traits were not directly relevant to the issues of the case. If we should attempt to justify the introduction of the evidence of Gemberling's good reputation for morality, it would have to be under the earlier decisions of the Supreme Court, holding that such evidence was an attack on his character upon a matter not relevant to the issues of the case, and in accordance with the holding in the case of *People* v. *Ah Fat, supra,* where the court said: ''There was no error in the admission of evidence of the character of the witness Gilman for truth and veracity. The evidence was authorized by the preceding testimony of the defendant's witness, Dole. If this testimony had been directed to mere proof of contradictory statements of Gilman upon matters relevant to the issues being tried, the propriety of evidence of character to sustain Gilman's testimony would have been, to say the least, questionable, although authorities may be found in support of its admissibility. (Greenleaf on Ev., sec. 469, and note 4.) But Dole's testimony went further than this. The conversation narrated by him was upon mat-

ters entirely irrelevant to the issues, and could have had no other effect than to induce the belief in the minds of the jury that Gilman was a suborned witness and unworthy of credit. It was as effectual an attack upon his character for truth as if his reputation in this respect had been assailed by direct inquiries; and we can see no good reasons for allowing proof of good character in the latter case, that does not apply as well in the case before us.''

■ Appellant Gladys Sellas complains of the modification of one of her proposed instructions by the trial court. As given it was as follows: ''Even though the jury may believe from the evidence that the chattels in question were taken from the said J. C. Gemberling contrary to his will and without his knowledge, still if you find from the evidence beyond a reasonable doubt that the defendant Gladys Sellas, did not intend to steal said property, but in good faith believed that she was assisting the defendant, Stella Farquhar, in obtaining property that rightfully belonged to her, then the jury should acquit the defendant Gladys Sellas.''

That this instruction as given is not a correct statement of the law is clear, as the jury was not required to find *beyond a reasonable doubt* that Mrs. Sellas did not intend to steal Gemberling's property in order to acquit her.

In several other instructions the court correctly instructed the jury that the burden of proving appellants guilty beyond a reasonable doubt rested upon the People; also that the appellants were both presumed to be innocent until proven guilty beyond a reasonable doubt, and that this presumption of innocence was to be considered as evidence in favor of each of the defendants, and was sufficient to acquit each of them of the crime charged unless it was removed by credible evidence that convinced the jurors to a moral certainty and beyond a reasonable doubt of the guilt of each of them.

■ Mrs. J. L. Manning, a sister of one of the appellants, was called as a witness in her behalf. Without laying any proper foundation therefor, a witness for the People testified to a conversation with Mrs. Manning which contradicted certain of her evidence and tended to impeach her. Appellants objected to the questions propounded by the district attorney to this witness on the ground that the evidence sought was irrelevant, incompetent and immaterial, but did not object on the ground that no proper foundation had been

laid. In 8 California Jurisprudence, 517, the following rule is laid down: "It is a general rule that an appellate court will not consider objections to the admission of evidence, unless the precise ground of objection was clearly specified in the trial court. The efficacy of an objection, as a general rule, depends upon the precision with which it is made. And a party cannot be permitted to abandon the ground of objection taken below and assume another one upon appeal. The defendant is deemed to have waived all grounds of objection not stated by him." This rule finds support in the cases of *People* v. *Hickman*, 113 Cal. 80 [45 Pac. 175], *People* v. *Owens*, 123 Cal. 482 [56 Pac. 251], and *People* v. *Ramirez*, 113 Cal. App. 204 [298 Pac. 60].

Appellants further complain of a statement made by the district attorney in his argument to the jury. When objection was made to it, it was promptly stricken out by the trial court, and the jury instructed to disregard it. This effectually cured the error, if any.

It remains for us to determine whether or not the errors occurring in the trial of this case are sufficiently prejudicial to warrant its reversal here under the provisions of section 4½ of article VI of the Constitution. In the case of *Rodetsky* v. *Nerney, supra,* the duty of the appellate court, under the provisions of this section of the Constitution is defined as follows: "It is not within our province nor can we from the record weigh the testimony or determine the credibility of witnesses, we not having before us all the facts which appeared to the jury, many of which, due to their nature, cannot be recorded; but we are required to do so to the extent possible. (*Hirshfield* v. *Dana*, 193 Cal. 142 [223 Pac. 451]; *People* v. *O'Bryan*, 165 Cal. 55 [130 Pac. 1042].) Before an appellate court may reverse the judgment of a trial court it must be of the opinion that the error complained of has resulted in a miscarriage of justice."

An examination of the entire and voluminous record in this case leaves us with a fixed opinion of the guilt of both of the appellants. The means used by appellants to break into and enter the house was evident. Credible and disinterested witnesses saw them removing articles of personal property from the Gemberling house which property a number of these witnesses thoroughly identified as belonging to Gemberling. A number of these articles were found in the

possession of appellants. The stories of appellants and their witnesses fail to produce conviction of truth, or to raise any doubt of the justness and correctness of the verdict of the jury. Under these circumstances we are of the conclusion that the errors complained of have not resulted in any miscarriage of justice, and that we are prohibited by the provisions of section 4½ of article VI of the Constitution from reversing the judgment of the court below.

The judgment and order appealed from are affirmed.

Barnard, P. J., and Jennings, J., concurred.