# KANSAS CITY, FORT SCOTT & MEMPHIS RAILROAD COMPANY *v.* SOKAL.

## Opinion delivered October 19, 1895.

TRIAL—REMARKS OF COUNSEL.—In a trial of a case on change of venue taken by defendant on the ground of local prejudice, plaintiff's counsel in his argument to the jury proposed to read the motion for change of venue. On defendant's objecting, counsel said: "I have no doubt they will interrupt me. It is the hit dog that always howls." The court said: "I expect that is an improper argument." Whereupon counsel said that he had "a right to read the record in this case," but that he did not "want to travel out of the record." The court replied: "It is not outside the record, but it is not a matter that the jury have anything to do with." Counsel then said: "I submit this, that if the record shows that this case was removed on the affidavit of these parties that they could not get a fair trial, that the feeling in that county is so strongly against them, I submit that is a matter of record which can be read to the jury." *Held*, that the remarks of counsel constituted prejudicial error.

REMARKS OF COUNSEL—STATEMENTS NOT SUPPORTED BY EVIDENCE.— In an action against a railroad company for unlawfully ejecting plaintiff from its train, a statement by plaintiff's counsel in his argument that there were a great many passengers on board defendant's train at the time of plaintiff's ejection, and that defendant kept a record showing where everybody got off the train, and could have had them all testify, and that it probably found that it would not do any good to bring them, is improper, where such statements are not supported by evidence.

Appeal from Mississippi Circuit Court.

JAMES E. RIDDICK, Judge.

*Adams & Trimble* for appellant.  *Wallace Pratt* of counsel.

1.  The judgment should be reversed for improper argument and conduct of plaintiff's counsel.  48 Ark. 106; 30 N. W. 630; 5 Atl. 838; 1 So. 202; 61 Wis. 114; 14 S. W. 566; 11 *id.* 127; 18 *id.* 583; 15 Neb. 20; 61 Iowa, 559; 79 N. C. 589; 4 N. E. 911; 8 S. W. 63; 44 Wis. 282; 70 Tex. 67; 52 N. W. 873.  Even a withdrawal by counsel of the objectionable argument will not in all cases save him.  14 S. W. 566.

2.  The court erred in refusing defendant's request. Sand. & H. Dig. sec. 6192; 49 Ark. 357; 43 Ill. 420; 54 Ark. 354.

3.  It was error to modify defendant's two requests by submitting to them the two questions, first, whether plaintiff was put off at an unsafe or dangerous place, and second, whether more force was used than was necessary.  There was no evidence on either point to go to the jury.  Furthermore, they were misleading.  57 Ark. 615.

4.  The damages were excessive.

5.  The question of punitive damages should not have been submitted to the jury.  147 U. S. 101; 53 Ark. 7.

*W. A. Percy* and *St. John Waddill* for appellee.

1.  The verdict is not excessive.  There were elements of physical suffering, of great indignity, of reckless negligence.  For such plaintiff was entitled to recover.  5 Am. & Eng. R. Cases, 560; 64 Miss. 80; 1 Rorer, Railroads, 735; 11 A. & E. R. Cases, 114; 5 Ark. 407; 26 Ark. 314; 37 *id.* 632; 42 *id.* 527; 35 *id.* 496; Suth. on Dam. vol. 1, pp. 710, 729, 755, 810; 3 *id.*

p. 260. The verdict is conclusive, there being evidence to support it. 25 Ark. 380; 39 *id.* 491; 56 *id.* 314.

2. This was a case for punitive damages. 56 Ark. 51; 53 *id.* 10. But actual damages only were allowed by the jury.

. 3. The argument of counsel was harmless, and was made in reply to a bitter speech by opposing counsel, in the warmth of debate.

BATTLE, J. John Sokal brought this action against the Kansas City, Fort Scott and Memphis Railroad Company, in the Crittenden circuit court, to recover damages sustained by him through the unlawful acts of the defendant. He alleged that, having purchased of the defendant a ticket on the 24th of December, 1890, which entitled him to transportation over its road from West Memphis to Jericho, in this state, he entered a passenger train of the defendant going to Jericho, at West Memphis, and delivered his ticket to the conductor; and that thereafter, before he reached Jericho, without any fault or misconduct on his part, the employees of the defendant, with force and arms, seized him, and wantonly ejected him, with great indignity, from the train to the ground below, whereby he was damaged in the sum of $10,000.

The defendant answered, and denied the allegations of the plaintiff, and alleged that he was drunk and disorderly on the train, and guilty of using profane and vulgar language in the presence of lady passengers, and otherwise so misconducted himself as to make it the duty of the conductor to eject him.

The venue in the case was changed, on the application of defendant, from Crittenden to Mississippi county.

The issues were tried by a jury. The evidence adduced in the trial was conflicting. It was proved that Sokal entered a train of the defendant at West Memphis, and was put off by the conductor before he reached

Jericho, the place of his destination, at a place which was not a station. But as to the delivery of a ticket, or payment of fare by him to the conductor, witnesses were not agreed. The conductor and a brakeman testified that he did not, while he swore that he purchased a ticket from the defendant, which entitled him to transportation in a passenger train over its road from West Memphis to Jericho, and delivered it to the conductor after entering the train, and introduced evidence corroborating his statement. As to the place he was put off, evidence was adduced tending to show it was a short distance beyond the station of Marion, near a trestle, and where the road bed was four or five feet high, and a ditch filled with water was at the foot of the embankment. It was raining or sleeting at the time he was ejected.

Evidence was also adduced tending to show that Sokal was intoxicated and noisy at the time he was put off the train; that he used profane language in the presence of ladies; and that he attempted to sit in the lap of a colored woman, and, when she remonstrated, cursed. But this evidence was contradicted by other testimony. It does not appear, however, that he was ejected on account of his noise, profane language, or improper conduct, but because he failed to pay fare, or deliver a ticket showing that he had done so.

Witnesses do not agree as to the manner in which he was ejected. Some testified that he was put off in a rude manner; was pitched off while the train was moving with such force that he fell down the embankment, and lay prostrate in the mud and water. Others testified that no violence was used, and that he alighted on his feet, and fell after the men who put him off had left him standing.

The conductor testified that he made a report to the defendant showing how many tickets he received from

West Memphis to Jericho on the day Sokal was ejected, which was sent to Kansas City, but he did not know whether it was then in existence, and did not remember what it showed. There was no evidence that any record was kept of the names of those who purchased tickets or delivered them to the conductor.

Upon the last argument of the case before the jury, Mr. Percy, counsel for plaintiff, who was making it, said:

"Now, gentlemen of the jury, why is this case here, and why are the people of Mississippi county called upon to try a railroad company running through another county for an offense committed in that county? The case is here on a change of venue from the good county of Crittenden, and who got it? Gentlemen of the jury, how did it come here? We find the papers of this case after the trial of it at Marion—"

Mr. Trimble, counsel for the defendant, interrupting, said: "If the court please, we think that it is an improper argument."

Mr. Percy said: "I have no doubt they will try to interrupt me. It is the hit dog that always howls."

The court said: "I expect that is an improper argument."

Mr. Percy said: "I am not going to read any of the evidence in that case."

The court: "I think it is improper to refer to the change of venue."

Mr. Percy: "I have a right to read the record in this case."

The court: "I do not think the jury has anything to do with the change of venue."

Mr. Percy: "Your honor will not let me state to the jury why this case was brought from Crittenden county."

The court: "No, sir, because that might defeat the object the defendant had in bringing it from one county to another."

Mr. Percy said: "Very well, sir, I don't blame them for wanting to keep that fact away from the jury."

Mr. Trimble: "Now, we except to that. We think it is an improper statement to make to the jury."

The court: "I think our supreme court has passed upon the question, and has properly held that it is entirely foreign to the case, and the jury should not consider and counsel should not argue it. I am satisfied Mr. Percy overlooked that at the time."

Mr. Percy: "I do not want to travel out of the record."

The court: "It is not outside of the record, but it is not proper to comment on it, because it is not a matter that the jury have anything to do with."

Mr. Percy: "I submit this, that if the record shows that this case was removed from Crittenden county upon the affidavits of these parties that they could not get a fair trial, that the feeling in Crittenden county is so strongly against them there, I submit that is a matter of record which can be read to the jury."

The Court: "No sir. It is not a matter you can read or the jury can consider in arriving at their verdict in the case."

Mr. Percy: "Very well, sir," etc.

Again, in the concluding portion of his argument Mr. Percy said: "A great many passengers were on board that train, some going to Kansas City. This railroad knows of everybody on there, where all those passengers are, and where they can be found, and they could have been brought here to testify."

Mr. Trimble: "That is not in evidence, and not the truth."

The court said that counsel must confine himself to the evidence.

Mr. Percy: "That is all right. I say this, that they have a record showing where everybody got off that train, and they could, had they so desired, have made an investigation, and found where everybody got off that train. It is probably true that they made an investigation, and found out it would not do them any good to bring them here."

Later in his argument Mr. Percy said: "Now gentlemen, taking their own theory of this law suit, that they put him off because he was too drunk to behave himself, could they sit there and see him fall down—a man in that condition in that sort of weather? They knew that ten, fifteen or twenty trains a day were running on that track, and the last that they saw of him was while he was falling down the side of the track. They did not know, and, in the language of Mr. Vanderbilt, they didn't give a damn, whether the next train that came along ran over him or not."

Mr. Trimble: "If the court please, we object to that as an improper argument."

Mr. Percy: "Let the hit dog howl always. But these men know that what I am saying is so."

The Court: "I hardly think the expression used is in keeping with the dignity of the court, and counsel should not use such expressions."

Mr. Percy: "I used it in quotation. I have heard it spoken in that way. I say the inhumanity of putting a man off in that condition, in that sort of weather, is something these people should be made to smart for."

The jury returned a verdict in favor of the plaintiff for $500; and the court rendered judgment accordingly; and the defendant appealed.

The remarks of counsel as to the change of venue and the record kept by the appellant were unquestion-

ably improper. The question is, should the judgment of the trial court be reversed on account of them?

Courts are instituted for the purpose of enforcing the right, and redressing wrongs, according to the laws. In jury trials, evidence is adduced for the purpose of ascertaining the truth, and instructions are given by the court to inform the jury as to the law applicable to the facts. Jurors should ascertain the truth from the evidence, and apply the law as given by the court to the facts as they find them, and return a verdict accordingly. Except as to those facts of which courts take judicial notice, juries should consider only the evidence adduced. Arguments by counsel of the evidence adduced and the law as given by the court are allowed only to aid them in the discharge of their duty. Within these limits counsel may present their client's case in the most favorable light they can. When they go beyond them, and undertake to supply the deficiencies of their client's case by assertions as to facts which are unsupported by the evidence, or by appeals to prejudices foreign to the case, they travel outside of their duty and right, and abuse the privilege of addressing the jury by using it for a purpose it was never intended to accomplish; for such assertions or appeals can serve no purpose except to mislead the jury and defeat the ends of the law in requiring them to confine their consideration to the evidence adduced and the law embodied in the instructions of the court. Hence it is the obvious duty of courts, in furtherance of the object of their creation, to prevent such assertions or appeals or, when made, to remove their evil effects, so far as they can; and attorneys, in the making of them, if they are calculated to prejudice the rights of parties, are guilty of a violation of the law, of an abuse of their privileges, of conduct unfair and unbecoming to their profession, and should be promptly and sternly rebuked by the court,

*When argument of counsel prejudicial.*

and, if need be, punished. *L. R. & F. S. Ry. Co.* v. *Cavenesse*, 48 Ark. 131, 132; *Brown* v. *Swineford*, 44 Wis. 282; *Holder* v. *State*, 58 Ark. 473; *Ferguson* v. *State*, 49 Ind. 34; *Shular* v. *State*, 105 Ind. 304; and *Waldron* v. *Waldron*, 156 U. S. 361.

While it is the duty of trial courts to confine counsel within the limits of legitimate debate, an omission to do this duty, while it may be a good reason for criticism, will not always entitle the appellant to a reversal of the judgment of the court below. A failure in this respect, which is not calculated to prejudice the cause of the appellant in the minds of honest men of fair intelligence, is not a ground for reversal. But material statements made by counsel of appellee outside the evidence, which were likely to injure appellant, and were excepted to by him at the time, and were not cured by the court, do constitute a good cause for reversal. Ordinarily, "an objection by the opposing counsel, promptly interposed, followed by a rebuke from the bench, and an admonition from the presiding judge to the jury to disregard prejudicial statements," is sufficient to cure the prejudice; but instances sometimes occur in which it is not sufficient, as *Holder* v *State*, 58 Ark. 473. *Combs* v. *State*, 75 Ind. 220.

The remarks of appellee's counsel in this case in respect to the change of venue were unquestionably improper, for the jury had nothing to do with that subject. The mild and doubting way in which the court sustained the objection to the remarks, and the positive manner in which counsel insisted upon his right to make them, were calculated to render the ruling of the court of no effect. When counsel for appellee sought to convert the objection of appellant's counsel into a confession that the record referred to was evidence damaging to the cause of appellant, the court said: "I expect that is an improper argument;" and counsel for

appellee, emboldened by the doubting manner in which the court expressed his opinion, positively and unqualifiedly asserted that he had " a right to read the record in this case." When counsel said, " I don't want to travel out of the record," the court replied, " It is not outside of the record, but it is not proper to comment on it, because it is not a matter that the jury have anything to do with." Encouraged by this remark, counsel again insisted on his right to read to the jury the record showing the proceedings in court in respect to the change of venue, by saying : " I submit this, that if the record shows that this cause was removed from Crittenden county upon the affidavit of these parties that they could not get a fair trial, that the feeling in Crittenden county is so strongly against them there, I submit that is a matter of record which can be read to the jury." And when the record as to the change of venue was in this manner brought before the jury, the court virtually bearing witness to the fact that counsel's statements were sustained by the record, counsel for appellee ceased to contend that it was proper for the jury to consider it. These statements, admitted by the court to be true, had then made impressions upon the minds of the jury which could not be easily removed. The apparent doubt of the court, and the positive, unqualified, and repeated assertions of counsel, were not likely to accomplish that effect. We think the statements were prejudicial to appellant. The liberal verdict of the jury tends to confirm us in that conclusion.

The statements made by counsel to the effect that appellant kept a record of the passengers on the train from which appellee was ejected, and knows where they are, and can produce their testimony, were unsustained by the evidence, and likewise improper, and should have been excluded from the jury. The other remarks objected to were based on evidence, except as

*Argument not supported by evidence is prejudicial.*

to the ten, fifteen or twenty trains passing daily over the track of appellant's railroad.

Appellant asked the court to instruct the jury as follows: "If the plaintiff had a ticket entitling him to ride from Memphis to Jericho, but failed or refused to exhibit or surrender his ticket, claiming that he had surrendered it to the conductor, when he had not, the conductor had a right to put him off anywhere; and if he did put him off under these circumstances, your verdict should be for the defendant." And the court amended it by adding: "Unless the jury find from the proof that he was put off at an unsafe or dangerous place, and that he was thereby injured, or unless the employees of defendant's train used more force than was necessary in ejecting plaintiff from the train;" and gave it as amended. Another instruction as to the right of appellant to eject appellee from the train for disorderly conduct was requested by appellant, and was amended by the court in the same manner and given. Appellant insists that these amendments were erroneous, "because there was no evidence whatever that appellee was put off at an unsafe or dangerous place and was thereby injured, or that more force was used than was necessary." We do not find any evidence to show that the place was unsafe or dangerous, but there was to prove that more force was used to put him off than was necessary. As the judgment in the case will be reversed, it is unnecessary to say more about these amendments. The defect indicated can be corrected in the next trial.

The judgment of the circuit court is reversed, and the cause remanded for a new trial.

Riddick, J., being disqualified, did not sit in this case.