WESTERN UNION TELEGRAPH COMPANY *v.* FURLOW.

Opinion delivered November 29, 1915.

1. TELEGRAPH COMPANIES—FAILURE TO DELIVER MESSAGE—NEGLIGENCE.—In an action for damages resulting from the negligent failure to deliver a message, an instruction offered by the defendant company was properly refused, which told the jury that if they found the matters were true which the defendant had offered evidence to prove, and which were set out hypothetically in the instruction, that the defendant was not guilty of negligence.

2. TELEGRAPH COMPANIES—HOURS OF SERVICE—DUTY TO DELIVER MESSAGE.—A telegraph message was sent to the town of T. for delivery there. Under the rules of the defendant telegraph company, the office at T. closed at 6 P. M. In an action for damages for failure to deliver a message in T. received at 5:50 P. M., *held*, while the telegraph company was under no duty to receive the message at T. after 6 p. m., yet, having received the message before that hour, its duty in the premises required appellant to exercise ordinary care to deliver the message, although the delivery could not have been made until after 6 P. M.

3. TELEGRAPH COMPANIES—FAILURE TO DELIVER MESSAGE—EVIDENCE OF ATTEMPTED DELIVERY.—A message was received at the town of T. at 5:50 P. M. Under the rules of the telegraph company its office closed there at 6 P. M. In order to deliver the message the operator telephoned the same to a stenographer at the place where the

addressee worked; *Held*, in an action by the sender of the message to recover damages caused by the failure of the addressee to receive the message, *held* the trial court should have permitted the company to prove that the stenographer agreed to deliver the message to the addressee thereof.

4.  TRIAL—ARGUMENT OF COUNSEL—VERACITY OF WITNESS—REVERSIBLE ERROR.—It is reversible error for the trial court to permit counsel to bolster up the testimony of a witness by asserting in argument that he had known the witness from childhood, and that the witness' veracity was beyond question.

Appeal from Lafayette Circuit Court; *George R. Haynie*, Judge; reversed.

*George H. Fearons, Chas. S. Todd* and *Rose, Hemingway, Cantrell, Loughborough & Miles*, for appellant.

1.  A verdict should have been directed for the defendant. The rules of the company provided that the office at Thornton should close at 6 P. M. The reasonableness of this rule was a question for the court. 73 Ark. 205. It was a reasonable rule. 108 Ark. 92. It was not the duty of the company to notify plaintiff of the rule. Hendricks, plaintiff's agent knew of the regulation. That was notice to plaintiff. 102 Ark. 607; 24 S. W. 86; 48 So. 712; 66 Mo. App. 8.

2.  No negligence was proven. Due diligence was shown.

3.  There was error in the court's charge to the jury. 73 Ark. 208.

4.  The verdict is excessive. 85 Ark. 263.

5.  The remarks of counsel were prejudicial. See, also, 174 S. W. 553; 91 Tex. 454.

No brief for appellee.

SMITH, J. Appellee recovered judgment for the sum of $600 to compensate the mental suffering sustained by her as the result of appellant's alleged negligent failure to promptly deliver a telegram, sent by her to her father. The proof is to the effect that she was visiting her uncle, who was appellant's manager at Lewisville, Arkansas, and on the 20th day of June, 1914, she determined to go to Thornton, Arkansas, where her parents resided. At about 5:25 P. M. she met her uncle at a restaurant in Lewisville,

and asked him to wire her father, a Mr. Young, that she and her baby would reach Thornton that night. Mr. Young did not receive the telegram that night, and it is alleged that this failure was due to appellant's negligence. The train left Lewisville about 9 P. M. and reached Thornton about midnight. No one met appellee at the train, and the night being very dark and, being encumbered with her baby and suit case, she sustained serious nervous disorders as the result of her fright and physical exhaustion.

Appellant interposed two defenses. The first is that appellee's agent in sending the message was aware that Thornton was a day office which closed at 6 P. M. and the message was started too late for delivery before the closing time at that office. The second defense is that Mr. Young was the shipping clerk of the Stout Lumber Company at Thornton and had been in the habit of sending and receiving messages for that company. That the outgoing messages were signed by Mr. Young and were phoned down from the office of the Stout Lumber Company by the stenographer there, and the incoming messages were phoned to the stenographer at the office of the lumber company, and that the lumber company had a messenger boy who ran errands and delivered messages for the lumber company, and he received the message in question for delivery to Mr. Stout at about 6 P. M. on the day of its receipt, and that this was the usual hour for the boy to call for messages. And it was further shown that appellant's business at Thornton did not exceed $125 per month, and that the larger portion of these receipts was derived from messages received from the lumber company.

It is not denied that when the message was received at Thornton the operator there phoned it to the lumber company, where it was received by this stenographer at the general office of the company. This was done at 5:50 P. M.

The court, over the objection and exceptions of appellant, ruled out the evidence of appellant's operator that the stenographer agreed to deliver the message to Mr. Young, on the ground that it was hearsay testimony

and not binding on him, but permitted the testimony to stand that the stenographer accepted and received the telegram.

It was shown that it would have been impossible to have delivered the message in any other manner than by telephone before 6 P. M. and the operator at Thornton testified that the rules of the company did not authorize or permit him to deliver messages or transact business after 6 P. M.

It was shown on behalf of appellee that her father would have met her had the message been promptly delivered. That Mr. Young would ordinarily have been found between 7 A. M. and 6 P. M. in the shipping department of the lumber company, and that there was a private telephone connecting his office with the company's general office. Mr. Young testified that the message was not delivered to him until the 22d day of June. That he could not recall that he had ever received any telegraph message by telephone from the general office during office hours, but he admitted that he had probably exchanged a telegram with his son-in-law about his daughter's condition in that manner, the message from him being sent, and the one to him being delivered, by this telephone. That he went to the postoffice every night, and would have received this message had it been mailed him after it was received at Thornton.

Appellant's operator admitted that he knew where Mr. Young lived and knew that he did not work in the general office of the lumber company, to which office the message was telephoned, and that his boarding house was only one hundred or one hundred and fifty yards from Mr. Young's residence. The agent admitted he could have mailed the message before 6 o'clock, but he stated that he did not regard this as the quickest way of reaching Mr. Young, and that he adopted the method which he thought would insure the delivery of the message before 6 P. M.

There was a sharp controversy between appellant's agent and Mr. Young over certain notations made on the telegram. The agent denied that the notation, "Delivered at 8 A. M." and the notation, "Filed at 11:30 A. M.,"

were on the message when it was sent to Mr. Young, who testified to the contrary. The effect of this contradiction was to disprove the statement of the agent as to the time and manner of the attempted delivery.

In his closing argument the Hon. Tillman B. Parks, of counsel for appellee, stated to the jury that he and Mr. Young had been raised boys together and had loved each other like brothers ever since, and Mr. Young's veracity was beyond question. The court refused to instruct the jury to disregard this argument, or to withdraw it from the jury.

(1) Appellant asked an instruction numbered 5, in which the jury was told that if they found the matters were true which appellant had offered evidence to prove and which were set out hypothetically in the instruction, that appellant was not guilty of negligence.

An instruction numbered 7 was also asked, which was to the effect that appellant owed no duty to deliver the message after 6 o'clock P. M., and that it was not negligence to fail to deliver the message after said hour at the home of the addressee.

Exceptions were saved to the action of the court in giving and refusing other instructions; but we find it unnecessary to discuss the questions there raised.

The majority of the court are of the opinion that no error was committed in refusing appellant's instructions numbered 5 and 7.

The view of the majority is that instruction numbered 5 was properly refused because the jury was told that the facts there hypothetically stated constituted a defense, and that, if those statements were true, the telegraph company was guilty of no negligence, whereas under the circumstances the jury should have been permitted to say whether or not greater diligence should have been exercised in the attempt to deliver the message.

I do not concur in this view, because I believe the operator should have done the very thing which he did to expedite the delivery of the message, and that reasonable diligence would have required no greater effort on his

part than that which he put forth. *W. U. Tel. Co.* v. *Alford,* 110 Ark. 379.

(2)   The majority are also of the opinion that no error was committed in refusing appellants seventh instruction.   That this is true because the undisputed evidence is that the message was received before 6 P. M. and having been so received before the closing hour that it was the duty of appellant's agent to make a reasonable effort thereafter to deliver the message.   The view of the majority is that, while the telegraph company was under no duty to receive the message at Thornton after 6 P. M., yet, having received the message before that hour, its duty in the premises required appellant to exercise ordinary care to deliver the message, although the delivery could not have been made until after 6 P. M.

I think this holding operates to extend the hours at Thornton, and therefore, conflicts with the case of *West. Union Tel. Co.* v. *Turley,* 108 Ark. 92.

(3)   We are of the opinion that the court should have permitted appellant to prove that the stenographer agreed to deliver the message to Mr. Young.   Such evidence, of course, would not be conclusive as a matter of law, under the view of the majority that appellant had discharged its duty in its endeavor to deliver the message, but this evidence would be proper for the consideration of the jury in the determination of the question of negligence.

(4)   We are also of the opinion that the court should not have permitted counsel, in his closing argument, to bear witness to the good character of Mr. Young.   The attorney who made this argument is the prosecuting attorney of his district, and was addressing a jury of his own county, and the purpose of the argument was to assure the jury that he had known Mr. Young from boyhood and knew his veracity was beyond question.   With this assurance the jury would be more likely to believe Mr. Young than the operator, and its effect would be to induce the jury to disregard the statement of the operator in regard to the notations on the telegram.   This attempt to

bolster up the evidence of Mr. Young was improper and prejudicial.

For the errors indicated the judgment of the court below will be reversed and the cause remanded.

Mr. Justice KIRBY, dissents.