Tri-State Transit Company of Louisiana, Inc.,
v. Westbrook.

4-7339                                    180 S. W. 2d 121

Opinion delivered May 15, 1944.

*Bridges, Bridges, Young & Gregory,* for appellant.

*Coffelt & Kirby,* for appellee.

Knox, J.    Appellee, a Negro resident and citizen of Saline county, Arkansas, being in Monroe, Louisiana, and desiring to go to Shreveport, purchased a ticket for passage on appellants' through bus operating between Meridian, Miss., and Shreveport, La., which was due to leave Monroe about 2 o'clock a. m., January 20, 1943. While the driver of the bus was in the station attending to certain duties, appellee boarded the bus and took a seat thereon.    The bus driver testified that the bus had been crowded all the way from Meridian and some passengers had been forced to stand, some twenty-five passengers were going on through, most of whom had gotten off the bus at Monroe; that it was the practice of the company to hold for their reoccupancy the seats of through passengers who temporarily left the bus at any

station, and to this end additional passengers were not taken on the bus until the through passengers had returned thereto, and then the new passengers were permitted to board the bus, first surrendering their tickets to, and taking a receipt from the driver. When the driver of the bus returned and found that appellee had boarded it in his absence he directed that he get off and await his proper turn to reboard.

The testimony as to what took place immediately afterwards is in conflict.

Appellee was the sole witness testifying in his behalf as to circumstances of the rencounter, and his testimony tends to show that he was sober and behaving himself properly at the time; that he got up in obedience to the driver's order and started off the bus; that the driver stepped off in front of him and as he stepped off the bus the driver hit him over the head with a crank without any provocation or warning whatever, knocked him to the pavement and drove off and left him lying there.

Six witnesses, the bus driver and five passengers, testified on behalf of appellants and their testimony tends to show that appellee was drunk at the time, and cursed the driver when he was ordered off the bus; that he got off the bus and hit the driver with his fist, and that the driver in self-defense struck at him with the crank, which appellee knocked out of his hand; that while they were fighting, an army sergeant standing nearby picked up the crank and struck appellee over the head with it several times and ended the fight.

In this action, the jury awarded appellee $500 as compensatory damages and also $500 as punitive damages. While several assignments of error are set out in the motion for new trial, only two points are argued; to-wit: (1) error in admission of evidence on cross-examination, and (2) improper argument on the part of counsel which was not corrected by proper and suitable action on the part of the trial court. These matters are set out in full in assignments 8, 10 and 11 of the motion for new trial as follows:

"8. Because the court erred in admitting, over the objections and exceptions of the defendants, the following testimony of the witness, Charles Musick, on cross-examination: 'Mr. Coffelt: You fellows in Louisiana knock them (Negroes) in the head when you want to, don't you? Mr. Gregory: We object to that. Mr. Coffelt: That is what you do—knock them in the head when you want to and get by with it? A. No. Q. Have you heard of it being done? The Court: Go on. Mr. Gregory: Save our exceptions. Mr. Coffelt: Isn't that the practice in that country when you deal with Negroes—when they get out of line you knock hell out of them? A. Yes, when they get out of line. Q. And that is what you did in this case—took the law in your own hands? A. I did not.' "

"10. Because the court erred in failing to admonish counsel for plaintiff against making improper and prejudicial statements, after being requested to do so by counsel for defendants, such request resulting from the following statement made by plaintiff's counsel during the opening argument to the jury, all of which was over the objections and exceptions of the defendants: 'Mr. Coffelt: Now about these depositions that were framed. Mr. Gregory: I object to that line of argument, and ask the court to tell the jury not to consider what Mr. Coffelt has said and also to admonish him not to make such improper statements. The Court: The jury should only consider the evidence before you.' "

"11. Because the court erred in permitting and allowing plaintiff's counsel to state, in his closing argument to the jury, the following, which the court refused to withdraw from the jury's consideration at the request of the defendants, all of which was over the objections and exceptions of the defendants: 'Mr. Coffelt: I don't know whether the jury knows much about court procedure or not. They accuse this Negro of perjury. I want to tell you that they have a right to investigate this Negro after this trial the same as before and to check upon every word of his testimony, and in the event you should find for him in this case, and it is later found that

he has perjured himself in any instance, the defendant in this case has fifteen days to file a motion for a new trial and they can set up any perjured testimony in that motion they want to. Mr. Gregory: I object to that, your honor, because that kind of argument is improper and highly prejudicial and it hasn't got anything to do with the issues to be tried by this jury. Mr. Coffelt: Your honor, they accuse this Negro of perjury. The Court: Objection overruled. Mr. Gregory: Save my exceptions. Mr. Coffelt: Yes, lady and gentlemen of the jury, the defendant has ample opportunity after a case is decided the same as before to investigate the plaintiff and if they can prove he has been guilty of perjury, they have that right and they know it, and they can set it up in their motion for a new trial and prove 'it, in the event you should find for the plaintiff, and they have fifteen days to do so, and to ask this court for a new trial on that ground.. I say to you this Negro has told the truth all the way through, and as I told you at the outset of this trial it is up to you to say where the truth lies. If you believe he has told the truth, find for him. If you don't believe he has told the truth, find against him. That's the issue for you to decide.' ''

The purpose of the questions propounded to Musick, the bus driver above quoted, was to disclose whether the people of his community generally accepted the doctrine, to which he himself also subscribed, that quick corporal punishment should be administered to Negroes ''when they get out of line.'' It was within the discretion of the trial court to allow such cross-examination to test the credibility of the witness, especially so since he testified that although the Negro applied to him a vile epithet he nevertheless took no action until after he was assaulted. *Hofler* v. *State,* 16 Ark. 534; *Hughes* v. *State,* 70 Ark. 420, 68 S. W. 676; *Carter* v. *State,* 196 Ark. 746, 119 S. W. 2d 913.

The argument of counsel presents a more serious question.

It has been stated generally that ''the control of argument is in the sound judicial discretion of the trial

judge'' and ''reversal rests upon (his) abuse of discretion . . . in not confining the argument within its legitimate channels.'' *Kansas City Sou. Ry. Co.* v. *Murphy,* 74 Ark. 256, 85 S. W. 428.

In his work ''Judicial Discretion of Trial Courts,'' Mr. Bowers, after pointing out that the term ''judicial discretion'' is in fact a ''misnomer'' and that its companion term ''abuse of discretion'' is ''unhappily phrased'' admits that such terms have ''become so deeply imbedded in the legal nomenclature that any attempt to dislodge them would be futile.'' Later the same author says: ''While trial courts are clothed with considerable discretion in controlling the arguments, little hesitancy is shown by appellate courts in reviewing the action taken below, and reversals are ordered, seemingly with alacrity, when it has been made to appear that prejudice resulted from improper argument of counsel.'' Bowers—Judicial Discretion of Trial Courts, § 283, p. 318.

The text above quoted is in conformity with pronouncements of this court. In the early case of *Vaughan* v. *State,* 58 Ark. 353, 24 S. W. 885, the court, although stating that control of argument was within the sound discretion of the trial court, nevertheless declared that the exercise of that discretion was subject to review, and added ''Whenever it occurs to us that any prejudice has most likely resulted therefrom (improper argument) we shall not hesitate to reverse on that account.''

In the case of *Kansas City Sou. Ry. Co.* v. *Murphy,* 74 Ark. 256, 85 S. W. 428, it was said: ''. . . . it is the duty of the appellate court to look to the remarks, and weigh their probable effect upon the issue; then to the action of the trial court in dealing with them; and if the trial court has not properly eliminated their sinister effect, and they seem to have created prejudice, and likely produced a verdict not otherwise obtainable, then the appellate court should reverse. However, a wide range of discretion must be allowed the circuit judges in dealing with the subject, for they can best determine at the time the effect of unwarranted argument; but that

discretion is not an arbitrary one, but that sound judicial discretion the exercise of which is a matter of review. . . . In the final analysis, the reversal rests upon an undue advantage having been secured by argument which has worked a prejudice to the losing party not warranted by the law and facts of the case.''

It is contended that the argument of counsel here was improper, and the action of the court ineffective to eliminate the sinister effect thereof in three particulars as follows: (1) counsel's reference to depositions of appellants' witnesses having been framed, followed by the court's statement ''The jury should only consider the evidence before you''; (2) counsel's statement ''I say to you this Negro has told the truth all the way through''; and (3) that the general effect of counsel's closing argument was an invitation to the jury to evade their responsibility under the belief that in its final analysis it was for the trial court on the motion for new trial to determine whether appellant had sworn falsely.

In the case of *Kansas City, etc., Rd. Co.* v. *Sokal,* 61 Ark. 130, 32 S. W. 497, Mr. Justice BATTLE, speaking for the court, said: ''Except as to those facts of which courts take judicial notice, juries should consider only the evidence adduced. Arguments by counsel of the evidence adduced and the law as given by the court are allowed only to aid them in the discharge of their duty. Within these limits counsel may present their client's case in the most favorable light they can. When they go beyond them and undertake to supply the deficiencies of their client's case by assertions as to facts, which are unsupported by the evidence, or by appeals to prejudices foreign to the case, they travel outside of their duty and right, and abuse the privilege of addressing the jury by using it for a purpose it was never intended to accomplish; for such assertions or appeals can serve no purpose except to mislead the jury and defeat the ends of the law in requiring them to confine their consideration to the evidence adduced and the law embodied in the instructions of the court.'' See, also, *Anderson* v. *Erberich,* 195 Ark. 321, 112 S. W. 2d 634; *Mo. Pac. R. Co.* v. *Fore-*

*man,* 194 Ark. 490, 107 S. W. 2d 546; *Hall* v. *Jones,* 129 Ark. 18, 195 S. W. 399; *St. L. I. M. & S. Ry. Co.* v. *Raines,* 90 Ark. 398, 119 S. W. 665, 17 Ann. Cas. 1.

Of appellants' six witnesses, the bus driver alone appeared and testified in person at the trial. The testimony of the other five, all of whom were passengers on the bus at the time of the difficulty, gave their testimony by means of depositions. Counsel for appellee in his opening argument said "Now about these depositions that were framed."

Of late years the word "framed," when used to describe evidence, has come to be generally accepted as implying that wilful perjurers, suborned thereto by, and acting in conspiracy with, parties in interest to litigation are swearing or have sworn to matters which have no basis in fact. (Webster's New International Dictionary, 1935.)

There is nothing in the record to support an inference that these "depositions were framed." In the case of *Herman Kahn Co.* v. *A. T. Bowden & Co.,* 80 Ark. 23, 96 S. W. 126, 10 Ann. Cas. 132, it was held that a statement by counsel in argument that two witnesses were "liars and scoundrels" being unsupported by evidence was improper and prejudicial.

The following statement is found in Hyatt on Trials: "Without justifying evidence, asserting or implying that a particular witness on the opposite side had been suborned to commit perjury is misconduct (which) cannot be deemed harmless merely because the evidence was conflicting . . . and the verdict was moderate." 2 Hyatt on Trials 1028. See, also, 1 Thompson on Trials 821; 2 R. C. L. 413; 64 C. J. 273 & 274, particularly note "f," p. 274.

It necessarily follows from what has been said that the charge that the depositions were "framed" constituted improper argument.

We reserve for later discussion questions (1) as to whether such argument, if standing alone and unrebuked by the court, would require a reversal; and (2) whether

action, which trial court did in fact take, was sufficient to cure the error.

In the course of his closing argument counsel for appellee said: "I say to you this Negro has told the truth all the way through . . ."

In the case of *Western Union Tel. Co.* v. *Furlow*, 121 Ark. 244, 180 S. W. 502, it was held that the action of the trial court in permitting counsel to bolster up the testimony of a witness by asserting in argument that he had known the witness from childhood, and that the witness' veracity was beyond question, constituted error.

Again we quote from Hyatt on Trials as follows: "Next to assailing the character and motives of adverse witnesses, some advocates seem to think that their purposes are best attained by crediting their own witnesses with as many virtues as faults are debited to those of the opposite side. The one kind of argument is as improper as the other, . . ." Hyatt on Trials 1606.

Counsel for appellants very forcefully contend that the purpose and effect of the entire above quoted language employed by counsel in his closing argument was to create in the minds of the jury the belief that in the final analysis the question of whether appellee's testimony was true or false would be determined by the trial court upon a motion for new trial, and that their decision with respect thereto would not be final. They argue that counsel's remarks sought to create the impression that if the jury wronged appellants by finding in favor of appellee such wrong could and would be righted by the trial court at the hearing on the motion for new trial, and that such argument was calculated to induce the jury to disregard its own responsibility to find the truth from the evidence and reflect the same in its verdict.

At 2 R. C. L., p. 418—Arguments of Counsel, § 15, it is said: "Statements that the higher court has the power to review the findings of the jury on the weight of evidence are calculated to induce the jury to disregard their responsibility, and are improper. Such error ordinarily will be overcome where the court admonishes the jury to

disregard the remarks and also directs counsel to refrain from indulging in them."

Nearly all of the cases cited in support of the text and revealed by further examination were criminal cases and for the most part deal with statements made by prosecuting attorneys with respect to the right of appeal and the power of the appellate court to review the weight of the evidence. See *McDonald* v. *People,* 126 Ill. 150, 18 N. E. 817, 9 A. S. R. 547; *People* v. *Johnson,* 284 N. Y. 182, 30 N. E. 2d 465, 132 A. L. R. 675; *Hammond* v. *State,* 156 Ga. 880, 120 S. E. 539; *Kelley* v. *State,* 210 Ind. 380, 3 N. E. 2d 65; *Hudson* v. *Commonwealth,* 161 Ky. 257, 170 S. W. 620; *Crow* v. *State,* 33 Tex. Crim. R. 264, 26 S. W. 209; *Commonwealth* v. *Smith,* 10 Phila. 189; *State* v. *Biggerstaff,* 17 Mont. 510 43 Pac. 709; *State* v. *Kring,* 64 Mo. 591; *Boone* v. *People,* 148 Ill. 440, 36 N. E. 99; *State* v. *Young,* 105 Mo. 634, 16 S. W. 408, 18 L. R. A., N. S. 321, 127 Am. St. Rep. 606; see, also, Note 46 L. R. A. 641, 670; *Neff* v. *Cameron,* 213 Mo. 340, 111 S. W. 1139; *Landro* v. *Great Northern R. Co.,* 117 Minn. 306, 135 N. W. 991, Ann. Cas. 1923D, 244.

Similar arguments have been considered by this court on at least two occasions: *Vaughan* v. *State,* 58 Ark. 353, 24 S. W. 885; *Southern, etc., Min. Co.* v. *Rice,* 156 Ark. 94, 245 S. W. 805. In each case the court specifically declared that such argument was "improper," but failed to reverse on that account, in the Vaughan case because (1) it doubted that the jury had been influenced, especially so since (2) the court had admonished them to disregard it, and, also, in the Rice case because the improper argument was an appeal for a large verdict, and the moderate amount allowed by the jury showed that no prejudice had resulted.

It is clear, therefore, that the argument of counsel was improper in all three of the particulars alleged. In determining whether improper argument requires the setting aside of a verdict many things should be considered, among which are, the character of the argument, the circumstances under which it was made, the effort

made by counsel and the court, or either of them, to remove the harmful effect thereof from the minds of the jury, the apparent effect which such argument had on the verdict, and many other things. As was said in *K. C. S. Ry. Co.* v. *Murphy, supra*: "In the final analysis the reversal rests upon an undue advantage having been secured by (such) argument . . ."

When objection was made to the opening argument the court, addressing them, said "the jury should only consider the evidence before you." A similar charge in *Mo. Pac. R. Co.* v. *Foreman,* 194 Ark. 490, 107 S. W. 2d 546, was held ineffectual to remove the prejudice resulting from the action of an attorney in emphatically stating a fact having no foundation in the record.

The court took no action whatever towards removing the harmful effect of the improper statements made by counsel in his closing argument, but on the contrary overruled appellants' objection made thereto. "Thus," as was said in *Doran* v. *State,* 141 Ark. 442, 217 S. W. 485, "the jury were given to understand by the judge himself, the ruling genius at the trial, that the arguments were not improper."

It is to be remembered that this action was being tried in Hot Spring county, the adjoining county to the one in which plaintiff and his counsel resided. The witnesses for appellant, although six in number, were all nonresidents of Arkansas. The plaintiff alone testified in his own behalf. He probably was no better known to the jury than were the out of state witnesses produced by the appellants, but some members thereof doubtless knew counsel in person or by reputation. The question naturally arose in the mind of appellee's counsel how best to get the jury to accept the uncorroborated testimony of his client, in the face of the contrary testimony of six unimpeached witnesses, who were guilty of no greater crime than being nonresidents of Arkansas. Evidently he decided to throw into the scales of justice charges of wrongdoing, suggestions of fact, and assurances of verity, vouched for only by his own unsworn statements. So he sought to discredit the testimony of

the five witnesses, who had given their testimony by depositions, by making the utterly unwarranted statement that such "depositions were framed"; then to bolster up the uncorroborated testimony of his client he gave the jury his personal assurance that appellee had "told the truth all the way through," . . . and then to clinch the matter he suggested, without actually so saying, that the court at the hearing on the motion for new trial could and would correct any erroneous finding which they might make. These do not appear to have been mere statements inadvertently made in the heat of trial. They appear to have been the result of a careful plan, made for the purpose of bolstering up appellee's uncorroborated testimony. Such design is admitted on page 15 of appellee's brief, in this language: "It may be that counsel should not have attempted to strengthen the force of appellee's testimony by reference to appellants' right to file a motion for new trial. . ."

Perhaps any one of these "improper" statements would not have been sufficient to require reversal, but when we consider their combined effect, we cannot escape the conclusion that counsel for appellee accomplished his purpose. The jury were persuaded to accept the uncorroborated testimony of appellee as against the testimony of six unimpeached witnesses. The repeated improper argument must have been the effective agency which produced this result. Since the argument was improper, and appellee has obtained an undue advantage thereby, the judgment will be reversed and the cause remanded for a new trial. It is so ordered.

Mr. Justice ROBINS dissents.