

# ARKANSAS COURT OF APPEALS

DIVISIONS I & II
No. CV–15–413

| | |
|---|---|
| | Opinion Delivered: FEBRUARY 24, 2016 |
| ERIN LANE POTTS<br>APPELLANT | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT [NO. DR-13-858] |
| V. | |
| TIMOTHY D. POTTS, JR.<br>APPELLEE | HONORABLE JIM D. SPEARS, JUDGE |
| | DISSENTING OPINION ON THE DENIAL OF REHEARING |

## KENNETH S. HIXSON, Judge

The appellate court is the guardian of fair play. We are somewhat insulated, and sometimes isolated, from the discord and cacophony of the trial court. We do not have the luxury of an NFL replay official where he simply sticks his head under a black hood and reviews a video replay of the actual play under review. Ours is generally a world of black and white emanating solely from the printed page. Sometimes that insulation is a detriment such as where we attempt to interpret the demeanor or credibility of a witness or the behavior or intent of parties or attorneys. But, sometimes that insulation is beneficial in that we can take a fresh, unadulterated look at the proceedings below without bias, prejudice, or emotion. We don't make the rules; we simply review what happened below to ensure the rules were followed. When rules are not followed and the notions of fair play are offended, the appellate court should be compelled to act. Such is the case in this matter. I

would grant Erin Potts's petition for rehearing because the trial court erroneously denied her a hearing prior to dividing the parties' property. Therefore, I dissent.

To put this matter in context, it appears from the record that this divorce was the type of divorce that gives divorces a bad name. The parties could not, or at least did not, agree on virtually anything. The trial court was repeatedly dragged into the fray to referee the participants. Shortly after the complaint was filed in October 2013 the disagreements began:

- Husband wrote to the judge and complained to the court that wife would not cooperate in visitation because the baby was breastfeeding and could not be away from wife for over three hours at a time.
- Husband wrote to the judge and complained that wife would not cooperate in making up missed visitation.
- Husband wrote to the judge and complained that wife would only allow visitation in a rented hotel room so she could breast feed the minor child during visitation.
- Wife wrote to the judge to complain that it was all the husband's fault.
- Judge, wife, and husband had a conference call to resolve the visitation issues.
- Judge entered a Temporary Order for joint custody and child support.
- Wife and/or husband wrote the judge a letter complaining summer visitation schedule was not working.
- Wife wrote the judge complaining that husband and his witnesses would not cooperate in discovery and depositions.
- Judge wrote a letter addressing the discovery issues.
- Wife filed motion for continuance from July 28 trial date.
- Husband objected to continuance.
- Judge denied motion for continuance.
- On July 29, 2014, the matter was tried. The parties agreed to joint custody. Proof of grounds for divorce was taken and corroborated. Property division was specifically reserved so attorneys could work out a settlement. Judge advised attorneys to have any property settlement approved by the other attorney.
- Within a couple of months of the divorce hearing, the parties started up again complaining to the judge. Husband complained that wife was interfering with his joint custody and alleged a material change in circumstances and requested primary custody. Husband also sent judge a proposed property-settlement agreement that had not been approved by wife.

- Wife complained to judge that nothing is her fault and that she disagreed with property settlement proposed by husband.
- On November 21, 2014, the judge wrote a letter to the parties and addressed, among other things, the marital property: "*On the remaining issues of the marital home and content. If the parties do not reach an agreement within ten days, the house and all contents will be sold and the money divided between the parties. … I do not feel a hearing on this matter would be helpful due to the fact that I am fully aware of the position of each of you and your clients and no other factual conclusions could be resolved.*"[1]  (Emphasis added.)
- On November 24, 2014, the judge changed custody from joint custody to primary custody to husband without a hearing but based on the contents of the numerous correspondences from the attorneys.
- The disagreements continued, and husband wrote the judge and asked the judge not to split the property equally because the marital residence was his pre-marital property and that there was a question concerning appreciation in the equity since the marriage.  Husband attached a 31-page appraisal of the residence to the letter.
- Two days later on November 26, 2014, wife turned around and asked the court for ten more days to settle the property disputes and not to consider the information set forth in the husband's letters as evidence on any ultimate decision.  Specifically, wife states, "*The defendant [wife] would further request that the court not piecemeal the property issues as requested by the plaintiff [husband]. … Again, the defendant [wife] is requesting that the court only consider evidence properly before the court, and is objecting to the introduction or consideration of any of the items the plaintiff [husband] has attempted to introduce through letters to the court or attachments to pleadings.  The defendant [wife] respectfully requests that the court set this matter for hearing so that any decision to modify this order be based on actual facts and evidence rather than hearsay propounded by the plaintiff [husband].  Thank you for your time and consideration regarding this matter, and I hope we are able to having a hearing in the near future so that these misunderstandings might be resolved.*"  (Emphasis added.)
- Even after the latest correspondence, the parties continued to disagree, and the husband prepared two proposed orders and sent them both to the judge.  One order apparently simply divided the property equally; the second order contained several pages of minutia concerning the property-division issues.[2]

Instead of having a hearing and accepting evidence on clearly disputed property-

division issues, the trial court apparently accepted the more detailed version of the husband's

---

[1] It is unclear from the context of the letter if the trial judge is referring to the continuing disagreement concerning custody of the minor child, the division of property, or both.

[2] The two proposed decrees are not in the record for comparison.

proposed divorce decree and property division.[3]   The decree of divorce was filed on

February 4, 2015.  To show the detail and factual findings of the trial court, a sampling of

the decree is described below:

> Paragraph 11 is approximately one and one half pages in length.  It discusses the marital home and concludes it was pre-marital property.  It discusses the valuation and appreciation of the home and amount of equity that will be divided.  It further discusses a finding that the wife has a retirement account at Walmart and that instead of dividing the equity in the residence, the parties should offset the balance in the Walmart account against the equity in the residence.
> Paragraph 12 is one page in length.  This paragraph divides several retirement accounts and brokerage accounts presumably owned by the parties.
> Paragraph 13 is approximately one page in length and divides automobiles and 26 line-itemed marital assets.
> Paragraph 14 is approximately one page in length and divides marital debt ranging from a Lowe's account to property taxes.

I include this summary description of the property-division portion of the Divorce

Decree only to show the degree of detail that was required by the trial court in making its

findings of fact.  The error is that the trial court had no evidence before it from which to

make these findings.  The divorce hearing held on July 29, 2014, did not contain any

evidence relating to marital property.  The only evidence introduced at that hearing was the

husband's grounds for divorce and corroboration.   The issue of property division was

specifically reserved.  While over the intervening months each party had requested a hearing

on property-division issues if an agreement could not be reached, no hearing was ever held

and no evidence was ever introduced.  All of the information and data used by the trial

court to divide the property was gleaned from pleadings, letters from counsel, and

attachments thereto.  As a matter of fact, the trial court stated as much.  The appellant filed

---

[3] See footnote 2.

a timely motion for reconsideration requesting a hearing on division of property and custody. The trial court denied the motion. The trial court entered an order and candidly stated: "*The Court finds that* based upon the testimony of the parties and the statements of counsel at the July 29, 2014, hearing and *based upon the Court's review of letters from counsel and the pleadings in this case there is sufficient evidence to support the Court's entry of Decree of Divorce.*" (Emphasis added.) Yet there was no evidence regarding property division introduced at the July 29 hearing. Hence, the only source of information that the trial court used to divide the property was "letters from counsel" and "the pleadings." While the trial court obviously bent over backwards for over a year to placate and referee two very disagreeable parties, the trial court clearly erred in substituting "letters from counsel" and "pleadings" in the place of evidence to decide both child custody and the division of property.

At least since 1910, Arkansas has held fast and true to the premise that pleadings and exhibits to pleadings are not evidence from which findings can be made. Our own court followed this premise only a few months ago in *Morrison v. Carruth*, 2015 Ark. App. 224, at 6, 459 S.W.3d 317, 321, where we held: "First, no evidence regarding Morrison's deed or tax payments was ever introduced at trial. Instead, Morrison attached copies of her deed and tax records to her complaint. *Exhibits to a pleading, however, are not evidence and must be introduced at trial in order to be considered. S. Farmers Ass'n v. Wyatt*, 234 Ark. 649, 353 S.W.2d 531 (1962); *see also Jones v. Harris*, 221 Ark. 716, 255 S.W.2d 691 (1953); *Foster v. Elledge*, 106 Ark. 342, 153 S.W. 819 (1913)." (Emphasis added.) This same premise can be followed back in time. In W*yatt*, 234 Ark. at 654, 353 S.W.2d at 534, the supreme court held:

*"Exhibits must be introduced in evidence in order to be considered.* An exhibit is merely a part of the pleading and has no greater dignity than the pleading to which it is attached." (Emphasis added.) And finally, back in 1910, in *Taylor v. Robinson*, 94 Ark. 560, 562, 127 S.W. 972, 973 (1910), the supreme court held: "In a trial at law deeds and other instruments of writing exhibited with the complaint, the execution of which is denied in the answer, must be introduced in evidence. *Their exhibition with the pleadings does not make them a part of the evidence in the case, unless they are adduced in evidence at the trial. Richardson v. Williams*, 37 Ark. 542; *Neff v. Elder*, 84 Ark. 277." (Emphasis added.) Similarly, letters from attorneys are not admissible evidence. *See Tri-State Transit Co. of Louisiana v. Westbrook*, 207 Ark. 270, 276, 180 S.W.2d 121, 125 (1944).[4]

Not only did the trial court refer to, and use, information that was not introduced into evidence, such a use of non-introduced evidence forecloses any meaningful appellate review. There is no evidence for this court to review in the record to even begin an analysis of whether the trial court's use of the information was clearly erroneous. There is no evidence to review whether the appellant was prejudiced. In *Williams v. State Office of Child Support Enforcement*, 2015 Ark. App. 225, at 5, 459 S.W.3d 321, 325, we reversed a finding of contempt because there was no evidence in the record to support the finding. We stated: "However, as to the circuit court's order holding Williams in contempt, the record reveals that OCSE presented no evidence of noncompliance with the Florida judgment. *The*

---

[4] There could be exceptions if the letter contains stipulations or other matters clearly designed to be used by the trial court as evidence. *See Tri-State, supra; see also Williams*: "The attorney's unsworn statements to the court that Williams had not paid were neither testimony nor evidence."

*attorney's unsworn statements to the court that Williams had not paid were neither testimony nor evidence.* As discussed above, evidence is required to prove indirect contempt, which occurs outside the presence of the court. *As there was no such evidence before the circuit court as to Williams' alleged failure to pay child support, the court's order holding Williams in contempt was clearly against the preponderance of the evidence.* Accordingly, we reverse." (Citations omitted.) (Emphasis added.) Similarly, in *Ponder v. Arkansas Department of Human Services*, 2016 Ark. App. 61, at 5, ___ S.W.3d ___, ___, decided only three weeks ago by this court, we reversed a change of custody because there was no evidence in the record. We held: "But our review of the record confirms that there were no findings made by the circuit court *based on the evidence presented at the review hearing* regarding the best interest of the children. Whether a change in custody is in the best interest of a child is a question of fact, not a matter of law, and as such, the best interest criterion must be attended by some proof. … *We hold that the circuit court committed reversible error by making findings despite a complete lack of evidence for the circuit court to consider.*" (Emphasis added.)

Again, while I commend and even applaud the trial court for exhibiting unrestrained patience and enduring the litigiousness and contentiousness of the parties, I cannot affirm a trial court's making findings of fact regarding the division of property based solely on letters of counsel and pleadings. Such a use of non-evidence is clearly erroneous. While the trial court may have been frustrated by its many months of refereeing the discord and cacophony readily apparent from the record in this case, in my view its remedy was to either set a hearing or impose sanctions under Rule 11 or Rule 37; not to decide the case on letters and pleadings.

I would be remiss if I did not make a comment on another holding in the majority opinion. Consider this perhaps as a caveat to the trial bar. The majority either affirms outright, or at least inferentially affirms, the proposition that where one attorney does not object to a proposal submitted in a letter to a judge by the opposing attorney, that the attorney has either acquiesced to the contents in that letter and proposal or, at least, cannot later object to the court's use of that letter as substantive evidence. The majority states:

> Timothy's last letter urged the court to enter his proposed decree reflecting a property division very close to what Erin wanted, and Erin did not respond. The record does not show that Erin ever proposed a property division to the trial court[5] or identified any specific property that was in dispute upon which she wanted the court to hold a hearing. Nor has she identified any such property on appeal. She has failed to explain what proof she was prohibited from presenting or how she was prejudiced by its exclusion.

Erin Potts's counsel describes the problem poignantly in his petition for rehearing: "*Surely the rule isn't that the last or most prolific letter writer wins or that you have to participate in a letter-writing campaign at all. But that is the effect of the Court's decision.*" I agree with, or at least am very concerned about, this point raised by Erin Potts's counsel. If we are going to allow letters and pleadings to substitute for evidence, then we no longer need Rules of Evidence—we need only keyboards and reams of paper.

In conclusion, on the one hand, the majority holds that the trial court was clearly erroneous in failing to have a hearing and accept admissible evidence to determine the issue of change of custody. On the other hand, the majority holds that the trial court did not err

---

[5] While Erin Potts did not submit a proposed property-settlement agreement to the trial court, Erin Potts did submit a proposed property-settlement agreement to Timothy Potts that was rejected. In letters dated November 13 and November 14, 2014, the trial court was made aware of Ms. Potts's rejected proposal.

in failing to have a hearing and accept admissible evidence to determine the division of property. The information used by the trial court on both questions, i.e., property division and custody, was gleaned from the same "letters of counsel" and "pleadings." I cannot get my head around why "letters of counsel" and "pleadings" are sufficient evidence for a property division, but not sufficient evidence for deciding custody. In my view, this case should be reversed and remanded for a hearing to decide both the custody and the property-division issues.

I would grant the petition for rehearing and reverse.